CRITCHETT v. THE AMERICAN INSURANCE COMPANY.

1. **Insurance**: DEFAULT IN PAYMENT OF PREMIUM: EXTENSION OF TIME BY AGENT.· A policy of insurance provided that in case of default in the payment of any installment of the premium note the company should not be liable for any loss occurring during the continuance of such default, but upon the subsequent payment of such installment the liability of the company should again attach and the policy be in force from that date. An agent of the company authorized to receive applications and collect and remit premiums, but having no authority to issue policies, agreed with the insured to grant an extension of time for the payment of an installment of the premium note, and after such installment became due by the terms of the note, and while still unpaid, the property was destroyed: *Held* that the extension of time was without authority and not binding on the company, and there could be no recovery on the policy. BECK, J. *dissenting.*

*Appeal from Mahaska District Court.*

THURSDAY, APRIL 22.

ACTION upon a policy of insurance. The defendant alleges that the plaintiff was in default at the time of the loss by reason of the non-payment of an installment of the premium. For a portion of the premium the company had taken the plaintiff's note, whereby he had obligated himself to pay the company three dollars upon the first day of Nov., 1876, and the same amount upon the first day of November in each of the three succeeding years. The policy contained a provision in these words: "If default shall be made by the assured in the payment of any installment of premium upon the installment note given for this policy for the space of thirty days after such installment shall become due, by the terms of such note, then this policy shall be null and void, and this company shall not be liable to pay any loss happening during the continuance of such default in payment of such installment; but on payment by the assured or his assigns of all installments of premium due under this policy, or upon the installment note given therefor, the liability of the company under the

policy shall attach, and this policy be in force as to all the losses happening after such payment, unless it shall be inoperative from some other cause."

The installment falling due Nov. 1, 1876, was not paid. The loss occurred March 9, 1877. There was a trial by jury, and verdict and judgment were rendered for the plaintiff. The defendant appeals.

*Lafferty & Johnson*, for appellant.

*John F. Lacey* and *M. E. Cutts*, for appellee.

ADAMS, CH. J.—The plaintiff claims that he was not in default at the time the loss occurred, notwithstanding the non-payment of the installment, which, by the terms of his note, fell due on the first day of Nov., 1876. He claims that the company had extended the time of payment. As evidence of such extension he testified that one Kennedy, the agent of the company at Oskaloosa, near where he resided, agreed with him after the installment became due to extend the time of payment until he (plaintiff) should receive a certain pension; that he received his pension March 8, 1877, and on the same day went to Kennedy's office to pay the installment due upon his insurance note, but did not find him, and on the next day, about 4 o'clock in the afternoon, the property insured was destroyed by fire.

The defendant denies that any agreement for extension was made between the plaintiff and Kennedy, and introduced Kennedy as a witness, who testified that none was made. Upon this point the jury found against the defendant, and the evidence being conflicting, their finding must be taken as conclusive. But the defendant insists that conceding that Kennedy agreed to an extension the defendant would not be bound by it, because Kennedy had no authority to bind the company in that respect, and further, if he had, that the plaintiff cannot recover, because the loss occurred after the time as extended, and the plaintiff had not paid even then.

*Marginal note:* 1. INSURANCE: default in payment of premium; extension of time by agent.

Kennedy's authority was shown by the certificate of his appointment introduced in evidence. From it, it appears that he was authorized to receive applications for insurance, and collect and transmit premiums. Kennedy testified that he was not authorized to issue policies, and it is not pretended that he was.

The court instructed the jury, in substance, that the plaintiff would be entitled to recover if they found that Kennedy agreed to extend the time of payment, and that the loss·occurred within such time. The giving of this instruction is assigned as error.

According to the terms of the policy, the company ceased to carry the risk at the end of thirty days from the time the installment became due. If the company continued to carry it, it was by reason of a contract not contained in the policy, and that contract must have been the alleged contract with Kennedy. Now, what precisely was that contract, taking the plaintiff's statement as to what it was? He says: "He (Kennedy) agreed he would give me time to get my pension." From this it will be seen that Kennedy did not undertake to contract that the company would, without payment, continue to carry the risk after it had ceased by the terms of the policy. It is doubtful, indeed, whether he even meant to bind the company not to enforce payment of the installment before plaintiff could get his pension. The words do not necessarily mean more than that he would not himself enforce it.

But we are of the opinion that if Kennedy had expressly contracted that the company should carry the risk without payment after it had ceased by the terms of the policy, such contract would not have bound the company. There is no pretense that Kennedy had any express authority to bind the company by any contract whatever. He belonged to an extensive and well recognized class of insurance agents from whom the power to make contracts is withheld. If he had the power to contract in the name of the company to carry the risk without payment after it had ceased by the terms of

the policy, it is because the law would imply such power from the fact that he was authorized to collect and transmit premiums. But an agent employed to collect a claim does not thereby have authority to bind his principal even to grant an extension of time. *Hutchings v. Munger*, 41 N. Y., 155; *Kirk v. Hiatt*, 2 Carter (Ind.), 323; *Corning v. Strong*, 1 Carter (Ind.), 329. Still less would such agent have authority to bind his principal by a contract of insurance. We have seen no case where the doctrine contended for by plaintiff has been held. We do not say that where a policy is delivered by an agent without the prepayment of the premium it will not take effect even though the agent have no authority to pass upon and accept the risk, and even though the policy provides that it shall not take effect unless the premium is prepaid. Where an agent is intrusted with a policy for the purpose of delivering it, and does deliver it, though in violation of a provision of the policy as to prepayment, it has been held that the assured has a right to assume that prepayment has been waived. *Young v. Hartford Fire Ins. Co.*, 45 Iowa, 377; *Bowman v. Agricultural Ins. Co.*, 59 N. Y., 521; *Mississippi Valley Ins. Co. v. Neyland*, 9 Bush., 430; *Sheldon v. Conn. Mu. Ins. Co.*, 25 Conn., 9.

But the waiver rests not simply upon something said by the agent which could be construed into an agreement of waiver, but upon something done by the agent which he was employed to do. The authorities all agree that a mere agreement to waive prepayment will not put a policy in force where it is not delivered. It is, therefore, the delivery of the policy which constitutes the ground of waiver.

It is true that in *Hallock v. Commercial Insurance Co.*, 2 Dutcher, 268, a recovery was allowed although the premium had not been paid nor the policy delivered. But the agreement for the insurance had been made *and the premium tendered*, which the agent declined to receive because the policy was not made out.

In *Trustees of Baptist Church v. Brooklyn Ins. Co.*, 19

N. Y., 305, there was a parol contract for a renewal, but no payment of the renewal premium. It was held that the plaintiff was entitled to recover. That case was substantially like the case at bar except that the contract was·made by the *officers of the company* and not by an agent. The principle decided, therefore, was materially different.

Nor does the case at bar come within the rule held in *Viele v. Germania Ins. Co.*, 26 Iowa, 9. That was a case where the risk was increased by the act of the assured contrary to the provisions of the policy. It appeared, however, that the agent assented to the use of the premises by reason of which the risk was increased. Such assent was held to be a waiver of the forfeiture. The doctrine of that case is unquestionably correct, but it rests upon the fact that the agent is made the judge as to whether a given use is an increase of risk or not. MR. JUSTICE BECK, who wrote the opinion, said: "The agent is charged, by the terms of the policy on which this suit is based, with the power to determine whether the risk is increased. If he so determines he may cancel the policy and put an end to the contract. This involves the necessity of examination of the condition of the insured property during the life of the policy, and constant watchfulness to protect the interest of the underwriters. If he determines that the risk is increased such determination is final. Such being the great and extraordinary powers of the agent, it follows that he is clothed with the power to dispense with conditions and waive the effect of breaches thereof in contracts of insurance made by him. If he can determine that the conditions of the contract have been broken, surely he can also determine that they have not been broken."

In our opinion there is nothing in this doctrine that affords support to the proposition that an agent who has not the power to make the contract of insurance can bind the company by his contract to an indefinite postponement of the payment of a renewal premium, and keep the policy in force in·contravention of its provisions. In *Bouton v. The Amer-*

*ican Mutual Life Insurance Company*, 25 Conn., 542, the premium was actually paid to the agent, though after the day it fell due. It was held that though the agent had power to make the contract of insurance, and had power to receive the premium when due, he had no power without an express authorization to bind the company by receiving it after it was due. Substantially the same doctrine was held by implication in *Insurance Company v. Norton*, 96 U. S., 234. In that case a recovery was allowed where the agent had extended the time of payment of premium, but the right of recovery was made to turn upon the ground that the jury was justified in inferring from the practice of the company an express authorization of the agent to extend the time of payment. There was no pretense that the agent by virtue of his power to make the contract of insurance and collect premiums could extend the time of payment. It is not uncommon, we think, for agents to keep a policy in force after a renewal premium becomes due, without actual payment by the assured. The agent sometimes credits the assured or issues a receipt to him without payment by him, the understanding being that the agent becomes personally liable to the company, and the assured to the agent. In such case as between the assured and the company the premium is regarded as paid. See Flanders on Insurance, page 164, and cases cited.

There is a class of cases where a receipt of premium by an agent paid when due has been held to be a waiver of a forfeiture incurred by a violation of a condition of the policy. See *Walsh v. Ætna Life Insurance Company*, 30 Iowa, 133, and cases cited. But where an agent who is authorized to receive premiums receives a premium paid when due, he is acting within the scope of his general authority. The assured has a right to suppose that the payment is valid; that it becomes a payment to the company, and that the company by receiving it, if it receives it with knowledge of the forfeiture, waives the forfeiture. We have been unable to discover any rule in the law of insurance which would justify

us in holding that an agent can bind the company by his consent to a postponement of a payment of a renewal premium, and keep a policy in force contrary to its provisions, unless he is expressly authorized to do so.

It has been suggested that Kennedy's authority to receive payment of premiums should be deemed to include the authority to bind the company to carry the risk without payment, because it might be for the interest of the company to do so. But authority to an agent to do one thing does not include, by implication, an authority to do another thing merely because it might be for the interest of the principal to do the other thing. An agent has implied authority to employ the usual and necessary means to accomplish what he is expressly authorized to do. In the case at bar the carrying of the risk without payment of the premium was not necessary to enable the company to collect the premium; that was collectible without any new contract or consideration. In no view, then, did Kennedy have the implied power to make the contract relied upon.

In our opinion the rule contended for by plaintiff would have a tendency to impair the value of all insurance, both fire and life. If insurance agents can grant a valid extension of the payment of renewal premiums for a few months, as in this case, while the risk continues, they can grant such an extension for a few years, or such length of time as the policy can be renewed. No company under such rule would be safe. Liabilities would constantly tend to become disproportionate to available resources. The interests bound up in insurance are too important to be thus jeopardized.

The foregoing considerations dispose of the case without regard to the fact that the loss occurred one day after the alleged extension had expired. The evidence was not such as to justify the instruction given, nor the verdict rendered.

REVERSED.

BECK, J., *dissenting.*—The policy in the case insured the property for five years, the term to end November 12, 1880.

The premiums were payable annually, the first being paid when the policy was issued, and the others secured by a promissory note payable in installments of equal sums on the 12th day of November of each subsequent year. The whole of the condition of the policy touching the effect of non-payment of these installments is not set out in the opinion of the majority of the court. The part omitted follows what is quoted in that opinion. I here present it:

"When a promissory note is given by the assured for the cash premium it shall be considered a payment of such premium, provided such note is paid at or before maturity, but if such note, or any part thereof, shall remain unpaid and past due more than thirty days at the time of any loss or damage, then this company shall not be liable to pay such loss or damages happening during such default, and no attempt to collect such note or any installment of premium upon the installment note aforesaid, whether by legal process or otherwise, shall be deemed a waiver of any of the conditions of this policy, or have the effect to renew the policy; but upon payment by the assured of the full amount of such note or installment, as the case may be, and all cost that may have accrued, then this policy shall be in force as to losses happening thereafter, unless inoperative or void from some other cause."

The agent who, as plaintiff claims, extended the time of payment, was expressly empowered by the defendant *to collect* and remit the premium due upon notes of the kind given by plaintiff.

The case presents this state of facts: The policy was an existing contract at the time of the destruction of plaintiff's property. But on account of the failure of plaintiff to pay an installment of the note which had fallen due, the contract could not be enforced against defendant if the breach of the condition were interposed as a defense. The contract had not ceased to exist; it was binding upon the parties, and defendant would become again liable thereon upon payment of

the premiums. The case does not, therefore, require us to determine whether the agent was authorized to enter into a contract of insurance. It is not claimed that his acts had that effect; nor, indeed, did the agent in the act of giving plaintiff time upon his note, make any contract for the company. The whole contract between the parties is embodied in the policy. But by extending the time of payment, the agent dispensed with the strict performance of the contract of the plaintiff to pay the premium on the day stipulated. The opinion of the majority of the court, I understand, concedes that if the agent did extend the time of payment, and had authority to do so, his act would operate as a dispensation of the condition of the policy and operate as a waiver of the forfeiture resulting from the non-payment. The only question, then, to be determined involves the power of the agent to make an arrangement with plaintiff that he should have further time for the payment of the installment then due or about to fall due.

The agent was authorized *to collect* the premiums. It cannot be doubted that if the plaintiff had paid to the agent the premium after default, the policy would have again attached. The agent could have enforced the payment under the terms of the policy. Thus far he was clothed with authority, upon the exercise of which, at his discretion, depended the binding force of the policy.

His authority to collect the premium could be exercised in such a manner and at such times as the interest of the defendant determined by the agent required. Surely, the authority to collect the premium was not so limited that it could not have been exercised after default by plaintiff. It follows that the agent, before default, could arrange with the plaintiff to extend the time in the exercise of his authority to collect, or in other words, could extend the time for payment.

It is not necessary to hold that the agent had authority to enter into a contract for the extension of the time upon the note. This would require authority to make a new contract under which the old contract would be modified. But the

extension of indulgence to the plaintiff under an agreement that the insured shall not be prejudiced by delay is quite a different thing.

I will illustrate this point by a supposed case. A. enters into a contract for the sale of lands to B., payment to be made upon a specified day, the time of payment being of the essence of the contract. The note given by B. to secure the purchase money is placed in the hands of C. for collection, who agrees with B. that indulgence shall be extended for a time agreed upon. In such a case the condition as to time is waived. The agent's power to collect the money was exercised in granting indulgence. I know of no reason why the same doctrine should not apply to policies of insurance. It is based upon the plainest reasons. Parties to a contract should not be enabled to lay ambuscades and pitfalls for one another; they should not, by professions of kindness and indulgence, induce the violation of the contract, and then take advantage of the default.

The agent of defendant in this case was authorized to collect the premium; there was no limitation upon this authority. He, therefore, could in the exercise of his authority, do all acts that could have been done by his principal in collecting the premium. He could grant indulgence and delay in the exercise of his authority.

As I have said, the agent made no new contract; his act in granting indulgence does not demand the exercise of authority to make a new contract.

My brothers in the foregoing opinion express the thought that the agent could not grant indulgence, unless he had the authority to enter into a contract of insurance. They think that the time for the payment of premiums can only be extended by insurance agents when they deliver the policy, or do some other act required in the execution of the contract. That agents possessing such authority, and under such circumstances may waive conditions as to the time of payment, does not support the conclusion that indulgence, or, if you

please, extension of time, may not be granted by an agent employed to collect premiums after the policy has attached. In my opinion the time at which an agent may perform acts under his authority, if not prescribed by the principal, rests in his discretion, to be exercised for the interest of the principal. The agent of defendant was authorized to collect the premium, he determined that he would not collect it, or demand its payment, until plaintiff received his pension, and so informed plaintiff, who, relying upon the arrangement, did not pay the premium before his house was burned. As the act of the agent in extending the time of payment was done in the exercise of authority to collect the premium, the defendant is estopped to enforce the forfeiture for the non-payment of the instalment.

The conclusion I reach that the payment of the installment on the day it fell due was dispensed with, and the forfeiture waived by the act of the agent in extending the time of payment, is supported by the following authorities. *Viele v. Germania Insurance Company*, 26 Iowa, 9; *Walsh v. The Ætna Life Insurance Company*, 30 Id., 133; *Young & Co. v. Hartford Fire Insurance Company*, 45 Id., 377; *Insurance Company v. Norton*, 96 U. S., 234; *Mississippi Valley Life Insurance Company v. Neyland*, 9 Bush., 430; *Sheldon v. Connecticut Mutual Life Insurance Company*, 25 Conn., 207; *Bouton v. American Mutual Life Insurance Company*, 25 Conn., 542; *Trustees of Baptist Church v. Brooklyn Insurance Company*, 19 N. Y., 305; *Bowman v. Agricultural Insurance Company*, 59 N. Y., 521; *Hallock v. Commercial Insurance Company*, 2 Dutcher, 268.

In my opinion the judgment of the District Court ought to be affirmed.