[Filed February 17, 1885.]

## HACHENY & BENO *v.* LEARY.

LIFE INSURANCE — FOREIGN CORPORATION — CONSTRUCTION OF STATUTE — DOING BUSINESS. — Taking an application for life insurance by an agent in Washington Territory, and forwarding to the insurance company in Kansas, which alone had authority to accept or reject the application, and where it was accepted, and a policy issued thereon, is not "doing insurance business" in said Territory, within the meaning of the statute thereof; but subsequently taking a note for an installment of the premium on such policy when it became due, and transmitting it to the company in like manner, is doing business within the meaning of such statute.

MULTNOMAH COUNTY. Plaintiff appeals. Affirmed.

The facts are stated in the opinion.

*H. H. Northup,* and *W. B. Gilbert,* for Appellants.

The contract of insurance was made in Kansas. (*Lamb* v. *Bowser,* 7 Biss. 315; *Lamb* v. *Bowser,* 7 Biss. 372.) Taking the note for an installment of the premium is not even "doing business" in the Territory, much less "doing insurance business." (*Charter Oak Life Ins. Co.* v. *Sawyer,* 44 Wis. 387; *Payson* v. *Withers,* 5 Biss. 269; *Graham* v. *Hendricks,* 22 La. An. 523; *Holmes* v. *Holmes,* 40 Conn. 117; *Jackson* v. *State,* 50 Ala. 141.)

*Henry Ach,* for Respondent.

It has been repeatedly held in this State that any prohibited act, or one done in violation of law, is void. (*Bank of B. C.* v.

*Page,* 6 Oreg. 431; *In re Comstock,* 3 Sawy. 218; *Simple* v. *Bank of B. C.* 5 Sawy. 90.) As a matter of law the application for insurance is a part of the contract. (*Commonw. Ins. Co.* v. *Huntzinger,* 98 Pa. St. 41.)   The taking of the note was the doing of an insurance business within the meaning of the statutes referred to. (*Cooper Manuf. Co.* v. *Ferguson,* 4 Fed. Rep. 498; *Lamb, Assignee,* v. *Lamb,* 6 Biss. 424; *Smith* v. *International Life Ins. Co.* 35 How. Pr. 126; *Fletcher* v. *N. Y. Life Ins. Co.* 13 Fed. Rep. 528; *Ætna Ins. Co.* v. *Harvey,* 11 Wis. 394; *Am. Ins. Co.* v. *Story,* 1 N. W. Rep. 889; *Price* v. *St. Louis Mut. Life Ins. Co.* 3 Mo. App. 268; *Bloom* v. *Richards,* 2 Ohio St. 388.) The Washington Territory law does not say "insurance business," but "business."

LORD, J.—This was an action upon a promissory note made at Seattle, Washington Territory, to one A. B. Covalt, and assigned after due to the plaintiff.

The defense set up is that the note was made in payment of a premium on a life insurance held by the defendant Yesler in a Kansas life insurance company; that the company had an agent at Seattle, Washington Territory, who solicited the insurance in January, 1876, and the note in question was given in August, 1876, at Seattle, in payment of the second semi-annual premium on the policy, and that the note was void, for the reason that the said insurance company was a foreign insurance company, and had not complied with the laws of Washington Territory in regard to foreign insurance companies doing business in the Territory.

It appears by the bill of exceptions that the said Covalt, mentioned in the note, and one Guion, were agents of Alliance Mutual Life Assurance Society, a corporation organized and existing under the laws of the State of Kansas, and were engaged in soliciting life insurance for said company at Seattle, Washington Territory, and in making and taking applications therefor, and in collecting and receipting for premiums thereon. That in January, 1876, at Seattle, in said Territory, the said Guion, as agent of said company, received the application of the defend-

ant Yesler, together with $671, the amount of the first premium, for which he gave the said Yesler a receipt, and then turned over said application, and the money so received, to the said Covalt, as agent of the said company, who forwarded the same to Leavenworth, Kansas, for examination and acceptance by the company. That the said company accepted the same, and thereupon issued a policy, which was sent by mail; whether to the defendant Yesler, or to their agent Covalt, to deliver to Yesler, the evidence is conflicting. That when the second semi-annual premium of $671 became due and payable on the said policy, in August, 1876, the said Covalt called upon the said Yesler for the payment of said premium, who, not having the requisite funds on hand at that time to pay the same, thereupon executed and delivered to the said Covalt the promissory note in question. That the said note was sent to the company, and retained by them until it became due and payable, and then forwarded to Seattle for collection; and upon default of payment being made, the company charged the amount of the same to the account of the said Covalt.

Upon this state of facts the court below instructed the jury that the taking of this note was doing insurance business within the Territory, and the result was a verdict and judgment for the defendant.

The contention of the plaintiff is that the taking of a promissory note in payment of a premium on an insurance policy is not "doing insurance business." Upon the facts as presented by this record, it would seem that the agent was not authorized to make a binding contract of insurance. As between him and the company, he was empowered to solicit and receive applications for insurance, and receipt for the premium money therefor, and to forward them to the company for their approval or rejection.

In *Armstrong* v. *State Ins. Co.* 61 Iowa, 215, it was held that the agent of an insurance company, who was authorized to take applications for insurance, and receive and receipt for premiums, and forward applications and premiums, and receive from the company policies of insurance when issued, and deliver them to

the assured, that such agent had no powers or authority to bind the company by a contract of insurance. (*Dickinson Co.* v. *Mississippi Valley Ins. Co.* 41 Iowa, 286 ; *Critchett* v. *American Ins. Co.* 53 Iowa, 404 ; S. C. 5 N. W. Rep. 543 ; *Ayres* v. *Hartford Ins. Co.* 17 Iowa, 176 ; *Reynolds* v. *Continental Ins. Co.* 36 Mich. 131 ; *Morse* v. *St. Paul F. & M. Ins. Co.* 21 Minn. 407.)

When the defendant Yesler presented and delivered his application, and the premium money therefor, to the agent, to be by him forwarded to the company for its acceptance or rejection, he knew and understood no policy of insurance would be issued unless the company accepted his application. Nor was any contract consummated until the application was accepted, and the policy duly issued.

The final act which made the transaction a binding contract upon the parties was the acceptance of the application. Until this took place it was a mere proposition tendered, to be accepted or rejected. The contract was consummated when the company acted upon the proposal and issued the policy, for then the minds of the parties had met and agreed. "What was before," says Harris, J., "a mere proposition, then became invested with the attributes of a contract, and from that time each party became bound for its performance. If this be so, the contracts are to be regarded as having been made when the company received and accepted the defendant's application, and issued and transmitted to him their policies." (*Hyde* v. *Goodnow*, 3 N. Y. 270.) It was, therefore, a contract of insurance made and executed in Kansas. (*Lamb* v. *Bowser*, 7 Biss. 373 ; *Lamb* v. *Bowser*, 7 Biss. 315 ; *Western* v. *Genesee M. Ins. Co.* 12 N. Y. 261 ; *Tayloe* v. *Merchants' F. Ins. Co.* 9 How. 400.)

Thus far the case stands clear. When the second annual premium became due on the policy of insurance, the agent called upon the defendant Yesler for its payment, and in lieu thereof, and under the circumstances already indicated, accepted the note in question. And the inquiry now arises whether the taking of the note was doing business in the Territory. To undertake to give an exact definition to the word "business," which could be applied as a test or criterion in every case, would

be an impossible task. It is said to be a word of large signifi-
cation, and to denote the employment or occupation in which a
person is engaged to procure a living. (*Goddard* v. *Chaffee*, 2
Allen, 395; *Martin* v. *State*, 59 Ala. 36.) Under a statute
that any person who shall do any manner of labor, business,
etc., shall be punished, etc., the loaning of money and taking a
note therefor was held to be business within the meaning of
such statute. (*Troewert* v. *Decker*, 51 Wis. 46.) In *Towle* v.
*Larrabee*, 26 Me. 466, it was held that a promissory note made
on Sunday, for the price of a horse bought on that day, was
void, as being in contravention of the statute prohibiting trade
and business. In *Lovejoy* v. *Whipple*, 18 Vt. 379, the taking
of a promissory note, executed upon Sunday, in consummation
of a contract previously made, was considered business. "It
thus seems," as said by Thurman, J., "to be the common
expression of the courts that the making of a contract is busi-
ness within the meaning of these acts." (*Bloom* v. *Richards*, 2
Ohio St. 388.) It is the inhibition against doing business on
this particular day against which these statutes are directed. It
is not that the consideration is illegal or void, as against public
policy, but it is the doing of a thing—the making of a contract ·
—on a day when it is prohibited and unlawful, that vitiates the
transaction and renders it void. The taking of a note for a
loan or debt, or other consideration, is the making of a contract,
and is a transaction which signifies business in the sense of these
statutes. The transaction is, in fact, the doing of business
which, being prohibited on that particular day, is void.

The company was prohibited from doing business in the Ter-
ritory without compliance with its laws. This it had not done.
It had effected an insurance, issued its policy, and the semi-
annual premium was due. Was the taking of the note in ques-
tion by the agent in payment of this premium the doing business
in the Territory? Was it a transaction which signifies the
doing of business? Tested by the judicial interpretation
applied to these statutes, the taking of the note was the making
of a contract, which signifies the doing of business, and is
within the prohibition of the law.

In *Smyth* v. *International Life Ass. Co.* 35 How. Pr. 128, the court held that the acceptance of yearly premiums upon outstanding policies, and of paying the losses thereon which may accrue, was doing business within the meaning of an act taxing all persons who are not residents doing business in the State. The issuing of policies, taking of premium notes, collecting or receiving cash premiums, and adjusting and paying losses, constitute the principal business of insurance companies. (*Lamb, Assignee,* v. *Lamb,* 6 Biss. 425.) Any or all of these acts, when they involve the making of a contract, import, at least, the doing of business, and if done within the Territory without compliance with its laws are void. The taking of a note for premium money is as much the making of a contract as was the insurance policy. As such, either or both would denote a transaction which signifies business, and if done when or where prohibited would not constitute valid contracts. It is not material that the note was made payable to the agent. The consideration was for premium money due the company, and it was taken by the agent, in his capacity as such, for the benefit of the company. It was as agent for the company, and in its interests and for its benefit, that he transacted the business. He had no other or personal business or dealings with the defendant Yesler. In the person of its agent it was constructively present, making a contract or doing business in violation of the laws of the Territory. This it could not do. To enforce, therefore, the payment of this note would be virtually to disregard the plain provisions of the law, enacted to subserve wise and salutary purposes. (*Pierce* v. *People,* 106 Ill. 18; Bliss Life Ins. § 140.)

"When the legislature prohibits an act," says Mr. Justice Walker, "or declares that it shall be unlawful to perform it, every rule of interpretation must say that the legislature intended to interpose its power to prevent the act, and as one of the means of prevention that the courts shall hold it void. This is as manifest as if the statute had declared that it should be void. To hold otherwise would be to give to the person or corporation or individual the same right in enforcing prohibited.

contracts as the good citizen who respects and conforms to the law. To permit such contracts to be enforced, if not offering a premium to violate a law, certainly withdraws a large portion of the fear that deters men from defying the law. To do so, places the person who violates the law on an equal footing with those who strictly observe its requirements." (*Cincinnati Mut. H. A. Co.* v. *Rosenthal,* 55 Ill. 91; *Bank of British Columbia* v. *Page,* 6 Oreg. 435; *In re Comstock,* 3 Sawy. 218.)

As the note was transferred after it was due, it was open to the defense alleged, which in our judgment is well sustained. There was no error, and the judgment must be affirmed.

THAYER, J., dissenting. — When this case was argued I was very much inclined to the opinion that soliciting and receiving applications for insurance in Washington Territory by an agent of a foreign insurance company, and forwarding them from there to the company, although the agent had no authority beyond the right to forward such applications to be examined and passed upon at the home office, would constitute the doing an insurance business within said Territory, and be in violation of its statutes, unless complied with by the company; but the authorities collected by his honor, JUDGE LORD, and referred to in the opinion prepared by him in this case, have changed my preconceived notions upon the subject, and I concur in that opinion to the extent that the insurance upon the life of Yesler by the Alliance Mutual Life Assurance Society was, as a matter of law, effected at the home office of said company, in the State of Kansas, notwithstanding the application therefor was solicited by the agent Covalt, in Washington Territory, was made there, and forwarded by said agent from there. But I am not able to concur in the opinion that the taking the note sued on for a premium, when the insurance was lawfully effected, was doing business within the meaning of the law of Washington Territory. Nor, under the circumstances suggested, do I believe that the legislature of that Territory intended, or could rightfully pass a statute that would render such an act unlawful. If the insurance was lawful, and the premium notes executed by Yesler

were valid, I am unable to understand why the company had not the right to collect them, or to adjust the claim by taking Yesler's note, with an indorser, in payment thereof.

If Yesler had been residing in Kansas when the insurance was effected upon his life, and had personally made the application therefor at the home office of the company, had executed the premium notes there, received the policy there, and then emigrated from that State to Washington Territory, it could not be doubted but that the company, as a matter of course, would have had the right to forward those notes, and collect them of him at their maturity. And the right of the company stands upon the same footing in this case as it would have stood in the case supposed, and it would no more be doing business, within the meaning of the laws of Washington Territory, in the one case than in the other.

Yesler owed the company a lawful debt, and how could a territorial or State law be construed consistently so as to prevent its collection? If Yesler had been in possession of the tangible property of the company, and it had attempted to recover it from him in Washington Territory, would not that have been doing business there, just as much as its attempt to recover from him its chose in action would have been? In either case, it would have been an effort to obtain from him that which belonged to it legally, and I do not see how such an endeavor could be adjudged a violation of law.

The Washington Territory law certainly only intends that a foreign life insurance company shall not, except under the conditions it imposes, do its insurance business there. It would, to my mind, be unreasonable to suppose that any company of that character could not enforce a payment of lawful obligations due to it without any compliance with such conditions, and an action instituted in its courts would be doing business as much as receiving a promissory note from a debtor.

If an officer intrusted with the funds of the Alliance Company, at its home office in Kansas City, should run off with them, in violation of his trust, to Washington Territory, could not the company cause his arrest upon civil process, or receive

indemnity for the injury, without filing in the office of the secretary of that Territory a copy of its articles of incorporation, and appointing an agent as provided in said laws; and would such an attempt to arrest the defaulter, or to obtain satisfaction without suit, be "commencing to transact business in the Territory," within the meaning of said laws? Such a requirement, imposed as a condition for doing such an act, would be strange comity. I fear that such a construction of the statutes of our neighboring Territory would do injustice to the courtesy of its citizens. The language of the statute is:—

"That all corporations now existing or hereafter formed under the laws of the States, etc., shall have full power and authority to sue and be sued, hold, purchase, and acquire, sell, lease,, and dispose of, real and personal property, and generally to do and perform any and every act, and transact business within this Territory in the same manner and to the same extent as though said corporation had been organized under the laws of this Territory; provided, that any such corporation hereafter acquiring property or commencing to transact business in this Territory shall first comply with the provisions of section 2 of this act."

The proviso, it will be seen, only extends to "acquiring property," and "commencing to transact business." Taking the note was not "acquiring property," as it was but a novation of a debt; nor was it the "commencing to transact business" within the meaning of the statute.

If the act had provided that no foreign lawyer should practice his profession in that Territory without having first been admitted to its courts, it would not extend to the collection of a fee there, earned somewhere else; or that no foreign merchant should carry on business there without a license, surely a merchant at Portland could sell a bill of goods to a Washington Territory citizen at Portland and send over his claim for collection without such a license. The territorial statute may be a wholesome provision of law, but I am at loss to understand why it should have such a latitudinarian construction as is attempted to be given it. The construction, doubtless, will

operate as a great favor to Yesler. He owed a premium note. It was a legal claim against him. He took it up by giving the note in suit, and although that has been put in circulation and credit been given upon it, yet, upon what appears to me to be a very flimsy reason, he is enabled to repudiate it. Yesler received the full benefit of the note; the consideration was valid. Hacheny & Beno have doubtless parted with goods upon the faith of it; but the former says that his payment and discharge of his legal obligation was, under the laws of Washington Territory, an illegal act, and he is relieved from his liability.

In my opinion, if such a law existed, it would be "more honored in its breach than in its observance." I am in favor of a reversal of the judgment.