## Richmond.

## METROPOLITAN LIFE INSURANCE CO. v. HALL.

### November 23, 1905.

1. EVIDENCE—*Insurance Policy—Parol Evidence to Vary.*—In an action to recover on a life insurance policy, a contemporaneous parol agreement or understanding between the agent of an insurance company who solicits the insurance and the insured as to the time and place of paying the premiums, different from that stated in the policy, cannot be given in evidence, as it varies or contradicts the terms of the written contract of the parties.

2. LIFE INSURANCE—*Non-Payment of Premium—Waiver by Agent— Extension of Time—Subsequent Illness.*—An insured should look at his policy and conform to it, and limitations of the agent's authority should be effective, unless the insurance company, by a course of business or otherwise, has waived the limitation on the agent's power of waiver. An agent to collect premiums has no authority to extend the time of payment of an overdue premium, and, where the policy declares a forfeiture for failure to pay at maturity, and forbids waiver by agents, their agreements to extend time of payment do not, as a rule, bind the company. If the rules of the company allow the superintendent to accept premiums after maturity but before the date when a premium receipt must be returned for cancellation, provided he can certify that the former insured is in good health, the assured takes the risk of being in good health between the dates mentioned, and, if not, the superintendent has no authority to receive a premium then tendered.

3. EVIDENCE—*Opinion of Witness.*—A witness should not be permitted to answer questions which do not seek to elicit facts, but mere opinions upon matters upon which opinion evidence is not admissible.

Error to a judgment of the Circuit Court of Alleghany county, in an action of assumpsit. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*O. B. Harvey* and *W. E. Allen,* for the plaintiff in error.

*Geo. A. Revercomb* and *A. C. Braxton,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

This is an action on a life insurance policy, which provides among other things, that if any premium or installment thereof be not paid when due the policy shall be void; that all premiums are payable at the home office, in the city of New York, but at the pleasure of the company suitable persons may be authorized to receive such premiums at other places, but only on the production of the company's receipt, signed by the president or secretary, and countersigned by the person receiving the premium; and that the contract between the parties is completely set forth in the policy and the application therefor, taken together, and none of its terms can be varied or modified, nor any forfeiture waived or premiums in arrears received, except by agreement in writing signed by either the president, vice-president, secretary or assistant secretary, whose authority for this purpose will not be delegated, and no other person has or will be given authority.

The premiums on the policy were payable quarterly, on the 16th day of April, July, October and January of each year. The second premium, which was due July 16, 1902, was not paid. On the 21st of that month, Gilmore, the agent of the insurance company, who solicited the insurance, delivered the policy and collected the first premium, went to the home of the insured,

who was living with her mother, the beneficiary in the policy in certain contingencies, to collect the second premium. The mother informed him that she had the money with which to pay the premium, but as her rent was due that day she would prefer not paying the premium until the next day, if that would be agreeable. Gilmore assented to this arrangement, but told her that he was going to leave the town (Covington, Virginia), the next morning, to be absent for several days, and that Mr. Hill, the assistant superintendent, would call and get the premium. Gilmore testified that he reported to Hill the arrangement he had made with Mrs. Hall; that Hill made no objection to it, and agreed to collect the premium the next day. This statement Hill denied. He did not collect the premium, but on the contrary about the 25th of that month returned the official receipt, which Gilmore had when he went to collect the premium, to the superintendent of the company at Lynchburg, and the policy was cancelled on the books of the company.

On the evening of the day upon which Gilmore returned to Covington, which was the 3rd or 4th of August, Mrs. Hall sent the amount of the premium to him, and he gave his receipt as agent therefor. The next morning he took the money to the office of Mr. Hill, but the officials there declined to receive it, stating that the insured was then sick of the disease (typhoid fever), of which she died on the 6th of that month.

The company refused to pay the policy upon the ground that the insured had forfeited all her rights under it by her failure to pay the second premium as provided by the policy. The beneficiary on the other hand insisted that there had been no forfeiture, or if there had been the company had waived it, or was estopped from setting it up as a defense.

One of the grounds upon which it is claimed that there was no forfeiture is that it was understood and agreed between the insured and Gilmore, the agent, that the premiums, although made payable by the policy on the 16th of the month, were not in fact payable until after the 20th of the month; and that it

was also understood and agreed that the premiums were payable at the house of the insured. Mrs. Hall and Gilmore, the agent, both testified that such was the agreement; but they further testified, or rather Mrs. Hall did and Gilmore's evidence is not to the contrary, that the agreement was made at the time the policy was issued.

This understanding or agreement was in conflict with the express terms of the policy, and could not be proved under the well settled rule, that contemporaneous parol evidence is not admissible to contradict or vary the terms of a written contract. *Towner* v. *Lucas,* 13 Gratt. 705; *Catt* v. *Olivier,* 98 Va. 580, 36 S. E. 980.

Richards, in his work on Insurance, sec. 77, says: "But it is very important to notice that an oral assent or promise made to the insured at or before the execution of the contract, to the effect that he may in the future violate the terms of the policy, is not binding, and cannot be shown by parol, because the oral promise becomes merged in the contract. Thus an antecedent promise by an agent that a premium note need not be paid when due cannot be shown by parol."

Another ground relied on to show that there was no forfeiture was that it was the custom of the company in Covingtn for its agents to go to the homes of the insured to collect the premiums and not to go until after the 20th of the month, because that was payday at the paper mill, in which many of the insured worked, and they were unable to pay until after that time, although the premiums, by the terms of the policy, were due and payable at an earlier day.

It appears that the insurance company issued at Covington two kinds of policies, one known as the "industrial," and the other as the "ordinary." By the express terms of the industrial, a different policy from the one sued on, which was the ordinary policy, the agents of the company were required to go to the homes of the insured and collect the premiums. The evidence further showed, perhaps, that as to the industrial poli-

cies the custom of the company was not to enforce strictly the rule as to the payment of the premiums the day they became due; but the evidence wholly fails to establish any such custom as to the payment of premiums on policies like that in suit.

It thus appears that the policy had lapsed for the non-payment of the second premium when it became due and payable, and that there can be no recovery thereon unless the insurance company has waived the forfeiture, or is estopped by its conduct from setting it up as a defense.

If it be conceded that Gilmore, who had possession of the official receipt of the company and was sent by Hill, the assistant superintendent, to the home of the insured to collect the premium after the policy had lapsed, could have received the premium so as to bind the company, without evidence that the insured was in good health, it does not follow that he had authority to extend the time for its payment, and bind the company afterwards to accept the premium when tendered if the insured was sick or dead when the tender was made.

An agent employed or authorized to collect a claim does not thereby have authority to bind his principal to grant an extension of time, at least for the payment of an overdue premium. *Hutchings* v. *Munger,* 41 N. Y. 155; *Critchett* v. *American Ins. Co.,* 53 Ia. 404, 5 N. W. 543, 36 Am. Rep. 230; Richards on Ins., p. 497.

"As to waivers taking place after issue of policy," says Parsons, in his editions of May on insurance, quoted by this court with approval in *Va. Fire & M. Ins. Co.* v. *Richmond Mica Co.,* 102, Va. at pp. 438-9, 46 S. E. at 466, 102 Am. St. Rep. 846, "it is very proper to require the assured to look at his policy and conform to it, and the limitation of the agent's authority should be effective, unless the insurance company, by a course of business or otherwise, has waived the limitation on the agent's power of waiver."

And in *Conway* v. *Phoenix, &c., Co.* (N. Y.), 35 N. E. 420, it was held, that where a life insurance policy provides that no

agent "can alter, modify, or waive, any of the terms or conditions of this policy," and any subsequent premium be not paid when due and a separate receipt signed by the president or secretary of the company in each case given therefor, then the policy shall cease, the general agents of the company, without its consent, cannot extend the time for paying premiums. It was further held in that case that where such agents, under a custom in their office, of which the company has knowledge, are at liberty, not to make any new agreement as to time for payment of premiums, but to accept payment after they are due and thus waive the right to declare a forfeiture, provided that at that time the conditions have not been changed by an alteration in the health of the insured, and they extend the time of payment of a premium by the insured, the risk is on him that pending the delay granted by the agents he may change in health or die and his insurance be lost; and in case of his death before payment the policy is forfeited.

By the terms of the policy sued on, the general agents had no authority to make any agreement for the extension of time for the payment of a premium, but under a rule of the company it was provided that, "Between the date on which a premium falls due and the date when a premium receipt must be returned for cancellation, overdue premiums may be accepted by the superintendent provided he can certify that the former insured is in good health."

If Hill, the assistant superintendent, had gone to the home of the insured on the 22nd day of July, as Gilmore testified he had agreed to do, and had found that the insured was sick, as she was on that day, so that he could not make the certificate of good health required by the rule, he would have had no authority to receive the premium, under the principles enunciated in *Conway* v. *Phoenix, &c., Co., supra,* which we think are correct. The insured had not lived up to her contract, and if she wished further time for paying the premium than is permitted by her policy, the risk incident to such delay ought

to be hers and not the insurance company's. While the contract was in force, as is said in the case last cited, and up to the time when the insured had the right to renew it by payment of the premium in advance, the risk in the matter was on the company; but upon failure to pay, after notice, upon the due date of the premium the risk was on the insured, that pending the delay permitted by the agents she might change in health, if not die, and her insurance be forfeited.

From what has been said it follows, that, in our opinion, the trial court erred in permitting the plaintiff to introduce evidence to establish a contemporaneous parol agreement or understanding as to the time and place of paying the premiums different from that stated in the policy of insurance; and also erred in giving Instruction No. 1, asked for by the plaintiff and objected to by the defendant.

The action of the court in overruling the plaintiff in error's objection to the following questions and answers is assigned as error, viz:

"Mr. Gilmore, if you had told Miss Hall that the policy would not be good if you did that" (referring to the agreement for an extension of time), "wouldn't she have paid you that day, or would she?"

Ans. "Yes, sir, I suppose she would."

"Now was it not the duty of the agent of this company to have gone to Miss Hall or Mrs. Hall in order to collect this premium after you had extended the time after the 21st of July?"

Ans. "I suppose it was; she was under the impression that the agent would come and collect it, and they had always done so."

The plaintiff insists that the bills of exceptions as to the rulings of the court in question are not sufficient to enable this court to pass upon them.

Without passing upon the sufficiency of the bills of exception, as the case will have to go back for a new trial upon other

grounds, and these questions may again be asked, it is proper to say, that if objected to by the defendant on the new trial the objection should be sustained, as the witness is not asked to state facts but to give his opinion upon matters upon which opinion evidence is not admissible.

The judgment of the Circuit Court must be reversed, the verdict set aside, and the cause remanded for a new trial, to be had not in conflict with the views expressed in this opinion.

*Reversed.*