## LAW AND CHANCERY COURT OF THE CITY OF NORFOLK

Stewart, Smith & Co., Inc.

v.

Frank Blaha et al.

Case No. (Law) 4916

By JUDGE EDWARD L. RYAN, JR.

April 4, 1969

This action is before the court on the motion for summary judgment of the defendant Hampton Roads Lighterage Corporation (Hampton). For this purpose, the court considers Hampton's answer and grounds of defense, copy of the Charter Party between Hampton and the owner of the barge, Hampton's request for admissions and interrogatories and plaintiff's responses thereto, and the affidavit of Thomas A. Bond, Jr., underwriting agent of the insurance policies that form the basis of this controversy. (Plaintiff and Hampton have stipulated that the court may consider said affidavit as binding evidence in connection with the motion for summary judgment).

Blaha Towing Service, Inc., as owner of the Oil Screw *Virginia B* (Vessel), entered into a bareboat charter party with Hampton on October 1, 1967. Paragraph 8 of the charter party provided that "the owner agrees to provide at its own expense, the necessary hull and machinery insurance which shall include collision coverage." Further provision was made that "the policy or policies shall name as assureds the parties hereto as Owner and Charterer respectively, and shall provide that the losses thereunder be paid to the Owner and the Charterer respectively, and shall provide that the losses thereunder be paid to the Owner and the

Charterer as their respective interests may appear." In its motion for judgment the plaintiff alleges that the necessary policies were so issued and delivered to the defendants.

Blaha defaulted in the payment of premiums to plaintiff, nd it now looks to both Blaha and Hampton for payment. The present issue is the liability, if any, of Hampton to plaintiff.

The insurance so provided for the protection of Hampton is in the nature of a "loss payable" clause or provision, and is a well-accepted practice in the insurance industry. Mr. Bond in his affidavit says that "this is normal procedure" and that "charterers and mortgagees are practically always named as assureds in marine policies such as were in effect on the *Virginia B.*" It most frequently arises in the financing of purchases of both personal and real property and in leasing arrangements. The clause is for the protection of the lending institutions and the lessors. It would seem that the principles of law applied in such matters would apply in this case.

In *Century Ins. Agency, Inc. v. Commerce Corp.*, 396 P.2d 80 (Alaska 1964), the lessee as required by the lease, purchased insurance for the benefit and protection of the lessor. Upon default in premium payment, the insurance company brought action against the lessor for payment. In denying recovery, the court said the following:

> Such a contract, the existence of which is essential for imposition of liability on the lessor, is missing in this case. In order for there to be a contract there must have been a promise by the lessor to pay the insurance premiums. There is no evidence that any such promise was made by the lessor here . . . . Nor is there evidence of any conduct on appellee's part which reasonably would have justified appellant in understanding that appellee intended to assume that responsibility . . . . The fact that the insurance policy was issued in (lessor's) name and for its benefit and delivered to (lessor) did not give rise to a justifiable expectation on appellant's part that (lessor) had undertaken to pay the cost of the insurance.

In 14 *Insurance Law and Practice*, Appleman, § 7842, the author discusses "Mortgage Loss Payable Clauses" and the absence of any responsibility on the mortgagee to pay the premiums, even in those cases where the policy contains a "Standard," "New York," or "union" clause providing that the mortgagee will pay the premiums if the mortgagor defaults. The following is said:

> [T]he vast majority of the courts have reached the somewhat surprising conclusion that such agreement to pay is not a covenant on the part of the mortgagee to pay premiums which can be enforced by the insurer, but is merely a condition to his right to recover the insurance proceeds. (i.e., the policy will be cancelled unless someone pays the premiums).

To the same effect see: *Whitehead v. Wilson Knitting Mills*, 139 S.E. 456 (N.C. 1927); *Farnsworth v. Riverton Wy Ref. Co.*, 249 P. 555 (Wyo. 1926); and 83 A.L.R. 105. (For extended discussion of "Mortgage Loss Payable Clauses," see Appleman, § 3401, et seq.)

A similar controversy, in reverse, arises where the insurance company must make a return of unearned premiums. The great weight of authority holds that the person who contracts for the insurance, and not the incidental beneficiary, is entitled to the return. See the annotations in 47 A.L.R. 1126, 56 A.L.R. 679, and 143 A.L.R. 1463. The leading and most quoted case appears to be *Globe and Rutgers Fire Ins. Co. v. Van Antwerp Realty Corp.*, 10 So. 2d 649 (Ala. 1942).

The evidence contained in the affidavit of Thomas A. Bond, Jr., causes this case to fall squarely under the principles of law quoted above from *Century Ins. Agency, supra*. Here there was clearly no contract between plaintiff and Hampton which "is essential for imposition of liability." Mr. Bond states that Blaha made arrangements for the insurance; that the coverage later issued "was in conflict with the wishes of the owner, Mr. Blaha"; that "at the time of the delivery of the contracts to Mr. Frank Blaha, strong exception was taken by him" to the type of coverage; and that while he did discuss several features

of the arrangements with Hampton's president, nevertheless, "this deponent did in fact look to Mr. Frank Blaha, and not to Mr. Pritchard or his corporation (Hampton), to pay the premiums during the life of the charter party with Hampton Roads Lighterage Corporation."

Mr. Bond tells us that "this deponent was assured on one occasion by (Hampton's) Mr. Pritchard that he would see to it that these premiums were paid" and that "Mr. Pritchard advised this deponent, 'I will see that you will not get hurt'." But the court does not understand these expressions to mean that *Hampton* would pay the premiums. Surely, they are not *express* promises to pay. In any event, as to any such supposed promise there is no "memorandum or note thereof . . . in writing and signed by the party to be charged thereby or his agent . . . upon a promise to answer for the debt, default . . . of another," which thus fails to meet the requirements of the Virginia statute of frauds. Code § 11-2.

> That statute contemplates a gratuitous verbal promise by one to pay the debt which *he* does not owe and is not liable for, but which is owed by another; and the intent and purpose of the statute is to compel the reduction to the evidence of writing of such voluntary promise, for the protection, alike, of *promisor* and *promisee* from fraud by reason of the uncertainty of any demand on such contract without consideration.

*Skinker v. Armstrong*, 86 Va. 1011 (1890). (Italics by the court).

Clearly, the language quoted above from the charter party places the debt and obligation on Blaha and is a debt that Hampton does not owe. Finally, Mr. Bond states that he never looked to or expected any payment from Hampton.

It follows that Hampton's motion for summary judgment should be sustained.

November 7, 1969

Plaintiff sues for premiums earned from the date of issuance of certain policies of insurance to the date of cancellation. Defendant's basic defense is that the policies delivered to him did not contain, in several instances, the types of coverage ordered by him from defendant's agent, Thomas A. Bond, Jr. He seeks to support this by parole evidence of the negotiations between him and Bond *prior* to the issuance of the *written* policies. This he cannot do.

### Parole Evidence Rule

It has been recently said that there is no jurisdiction in which the parol evidence rule has been more often invoked and more strictly adhered to in its integrity than in Virginia; and there is at least a degree of truth in this assertion. Thus it is often stated that there is a conclusive presumption that the whole agreement of the parties was incorporated into the writing . . . . The Virginia rule becomes: Where it is not apparent from the writing itself that something is omitted to be supplied, where the writing is perfect in itself and is capable of a clear and intelligible exposition from the terms of which it is composed, a complete integration will be presumed.

The Law of Evidence (Va. & W. Va.), Nash, § 246.

To attempt a summation: If the parol agreement relates to some phase of the transaction dealt with *fully* in the writing, the presumption of integration is virtually conclusive, and the parol agreement almost certainly may not be shown . . . .

*Ibid.* § 247. (Emphasis by the author.)

In *New York Life Ins. Co. v. Franklin*, 118 Va. 418 (1916), the written provision of the policy as to the payment of premiums was clear and unambiguous. The insured

decedent's beneficiary introduced oral evidence of the agent that he had advised the decedent of premium terms that were in conflict with the policy provision, and more liberal to the insured and his beneficiary. In reversing the trial court the Court of Appeals said the following:

> [b]ut this evidence was objected to and should have been excluded on the ground that there were no circumstances which warranted the introduction of parol testimony to contradict the terms of the policy.
> Parol evidence is admissible in cases based on insurance policies, as in those based on other written contracts, to explain ambiguous terms, and the courts are disposed to be especially liberal in this respect in dealing with the former class of contracts. But the case in hand affords no just ground upon which to permit parol evidence to explain the intention of the parties. Applying to this evidence, as we properly may, what Judge Buchannan said in *Metropolitan Life Ins. Co. v. Hall*, 104 Va. 572, 575, 52 S.E. 345, 346, "this understanding or agreement was in conflict with the express terms of the policy, and could not be proved under the well-settled rule that contemporaneous parol evidence is not admissible to contradict or vary the terms of a written contract. (Citing cases).
> *Policy best evidence.* In the absence of fraud or mutual mistake, the written contract, if there be one, is the best and only admissible evidence of what the contract is as to all matters which it purports to cover." (Citing cases and several authorities).
> It was error to admit this testimony by Overstreet and to instruct the jury . . . that upon such evidence they might find that the policy remained in force for seven months after the payment of the first premium.

See also to the same effect: 44 Am. Jur. 2d, *Insurance*, sect. 2028, p. 967.

To permit the defendant, or any other party to a contract, to violate the parole evidence rule would result in chaos. This is peculiarly true in a commercial or business matter, such as presented in this case.

An insured's remedy is to read his written policy promptly, and if dissatisfied with it, for any reason, to cancel same. While it is true that the defendant did not receive the policies until several months after the "binder" with the agent became effective, he knew he was dealing ultimately with a New York plaintiff that would be required to place the coverage in English companies. Necessarily, this is a time-consuming process.

Upon receipt of the policies the defendant did complain and Bond made efforts to satisfy defendant's wishes, but he refused to accept the amendments or to pay the premiums. Defendant may insist that these later negotiations are corroborative of the earlier negotiations, but this is a *non sequitur* if the earlier matters cannot be considered by the court.

There was utterly no evidence of any fraud or mutual mistake, or any other ground, that would bring this case within any exception to the parole evidence rule.

It follows that judgment must be in favor of plaintiff.