NELLIE O'GRADY *vs.* THE KNIGHTS OF COLUMBUS.

New Haven & Fairfield Cos., April T., 1892. ANDREWS, C. J., CARPENTER, SEYMOUR, TORRANCE and FENN, Js.

The defendant was a corporation for the payment of endowments at the death of its members to certain beneficiaries named by them, with local subordinate councils, and had adopted among others the following regulations:—One article provided that the endowment should be paid "upon the death of any member * * * in good standing at the time of his demise," and that a member should "be deemed in good standing for the purpose of claiming endowment who at the time of

his death was not indebted to his council." Another article provided that "members four months in arrears for dues shall be *ipso facto* suspended," and that " members legally suspended shall not be entitled to any of the privileges of membership whatever, until re-instated according to law." Held that the right of the beneficiary of a deceased member to recover the endowment depended on the question whether the member at the time of his death was indebted to his council, and not upon the question whether he had been suspended and not re-instated.

A member who was indebted to his council for several assessments, and had been suspended and not re-instated, died. A few hours before his death his beneficiary paid the amount due to the financial secretary of his council and took a receipt for it. Held—(1) that this payment did not effect a re-instatement of him as a member. But (2) that it did extinguish his indebtedness to his council, so that at the time of his death he was not indebted, and his beneficiary was entitled to the endowment.

[Argued May 7th—decided September 12th, 1892.]

ACTION to recover the amount of an endowment claimed to be due to the plaintiff from the defendant corporation, as the beneficiary of a deceased member of the corporation; brought to the Superior Court in New Haven County, and tried to the court before *Thayer, J.* Facts found and judgment rendered for the defendant, and appeal by the plaintiff.

*J. W. Alling* and *S. C. Morehouse*, for the appellant.

*P. J. Markley*, for the appellee.

TORRANCE, J. This is an action to recover a sum of money claimed by the plaintiff as the beneficiary of a deceased member of the order of the Knights of Columbus.

John F. O'Grady, the deceased, who was the husband of the plaintiff, became a member of that order in July, 1888, by his legal election as a member of a subordinate council of the order, known as Roderigo Council. The principal, if not the only, question at issue in the court below, was whether he was a member in good standing, for the purpose of claiming endowment, at the time of his death in August, 1890. Upon this point the court below found the following facts:—

On December 30th, 1889, the deceased received notice of

an assessment, which required him within thirty days from the date of the notice to pay the sum named therein, under penalty of being *ipso facto* suspended from membership by his failure to pay as required. Between that date and the time of his death O'Grady received six other notices and requests of a like character, being other and distinct assessments, the last of which was dated July 23d, 1890. The amount of these assessments was nine dollars and fifty cents. These notices of assessments were issued by Roderigo Council in all respects as required by the laws and rules of the order. Before sending them out the council had received notice of the deaths mentioned in the notices, and had in each instance from time to time paid from its treasury to the defendant the amount which it thus from time to time called upon the deceased to pay.

The defendant, in levying these various assessments for the deaths of members named in the notices upon Roderigo Council, reckoned the deceased in every instance as a member of the council, and the council paid its assessments in every such instance as if he was a member of that council. None of the assessments upon O'Grady were paid by him except as hereinafter stated. On the 29th of August, 1890, there was due from O'Grady to the council these assessments, and also membership dues of fifty cents per month for nine months. It is found that on the evening of that day, at about eight o'clock, the plaintiff " paid the financial secretary of Roderigo Council the amount of said assessments and dues, in all fourteen dollars, and he gave her a receipt therefor the next day, he being absent at the time the money was left at his home." O'Grady died about three o'clock in the morning of August 30th, 1890. The defendant had no knowledge until after O'Grady's death that he had neglected to pay his assessments and other dues to his council as before stated.

If by reason of his failure to pay his assessments and dues O'Grady became suspended from the membership of the order, it is agreed that he made no application for reinstatement as required by the laws and rules of the order

and had not been re-instated. The laws and rules of the order are made a part of the finding.

Section first of article nine of the laws provides that "upon the death of any member legally elected and in good standing at the time of his demise, the order of the Knights of Columbus shall pay to the beneficiary" the endowment provided for in such laws, except in certain contingencies which do not affect the case at bar. Section third of the same article reads as follows :—" A person shall be deemed to be ' legally elected' who has been admitted to the order in compliance with the rules of the order, and who has been guilty of no deception or fraud in obtaining such admission. A person shall be deemed in ' good standing' for the purpose of claiming endowment who at the time of his death was not indebted to his council for moneys paid on his account by said council to the order." Section eight of the same article provides that " any member of any council who fails, neglects or refuses to pay " his assessment " for thirty days after notice, * * * shall be *ipso facto* suspended from the order, and can only be re-instated by vote of the board of directors, and upon such conditions as said board may direct and determine." A further rule passed in June, 1889, provides that " *ipso facto* suspension from the order shall occur to any member failing to pay any death endowment assessment within the period of thirty days, exclusive from the date of mailing or transmitting the notice for endowment payment by the secretary of said council." Another rule passed in June, 1889, reads as follows :— " Members four months in arrears for dues in councils shall be considered to be *ipso facto* suspended from the order." Section five of article ten provides that " no person or persons suspended as set forth in the laws of the order shall during the time of such suspension have any claim of any description whatever against their council or the order." Also in a rule passed in June, 1889, it was provided " that members legally suspended from the order or a council shall not participate in any business of the council or order, nor be entitled to any of the privileges of membership whatever

until re-instated according to law." These constitute all or most of the laws and rules which have a special bearing upon the question to be discussed.

. The principal question in the case, and the only one we deem it necessary to consider, is whether, upon the facts found and under the laws and rules aforesaid, O'Grady was at his death a member of the order in good standing " for the purpose of claiming endowment."

The plaintiff claimed that he was, basing this claim mainly on section third of article nine aforesaid; the defendant claimed that he was not, basing its claim principally on the fact that O'Grady was a suspended member, and that under the rules of the order no suspended member could have " any claim of any description whatever " against the order, nor was he " entitled to any of the privileges of membership whatever." The court below rendered judgment for the defendant, and the plaintiff appeals therefrom.

The rules upon which the respective parties rely seem on their face to be inconsistent with each other, and when read without reference to other parts of the laws and rules of the order, appear, perhaps, to sustain the claims made by both. They must, however, be read in the light of other provisions in the rules, and when so read we think the inconsistency will be found to be more apparent than real, and that full force and effect may be given to each of the provisions in question without detracting from the force and effect of either.

The defendant's claim in brief, is that a suspended member until re-instated is deprived of all the rights, benefits and privileges of membership, including the right to the " endowment " as it is called, and consequently if he dies before re-instatement the right to the " endowment " is lost. Now it must be conceded that O'Grady by his failure to pay his assessments and dues became suspended, and died without being re-instated.

We think it too clear for argument that, under the express rules of the order, the payment made by the plaintiff did not re-instate O'Grady or remove the effects and conse-

quences of his suspension. The first of the amendments to the rules passed in June, 1889, expressly so provides.

If it be true then that a suspended member until re-instatement is deprived of his right to endowment, it would follow that the plaintiff is not entitled to the sum she claims. But is it true that a suspended member is so deprived? That is the important question in the case, and the answer to it must be sought for chiefly in the rules of the order to which reference has already been made.

Coming then to article nine relating to endowment, we find the conditions upon which the payment of endowment depends stated with great clearness. One of these conditions (and the only one which concerns this case) is that a member shall be " in good standing at the time of his demise." Now, standing alone, the phrase " in good standing" would not be very clear or definite; there would be room for dispute as to what it meant or included. To prevent dispute, however, in a matter of so much importance, section three of the article defines with great precision what the phrase means when used as descriptive of one of the conditions of the right to endowment. Its meaning may be doubtful elsewhere, but the framers of these rules meant to leave no doubt as to its meaning in that connection.

The language of this section is quite significant. Its framers knew that under the rules a member might become " suspended," either *ipso facto* or after trial, for a great variety of causes, some important and some trivial. On account of some slight lapse of memory, or temporary absence, or temporary inability to pay, he might be *ipso facto* suspended before he was aware of it, and although he had paid all his dues and assessments, might die before proceedings for re-instatement could be instituted, or pending such proceedings. They realized fully that one of the principal features of the order was this endowment feature, which could never benefit the member personally, but would be payable after his decease, in most cases to those who had been dependent upon him and in their hour of sorest need. They knew that the end and purpose of the order was to

aid its members and not to make or save money out of their slips and misfortunes, and its laws seem to have been framed to carry out that object and not to entrap the unwary. With this knowledge, and in view of the importance of this endowment feature of the order, section third of article nine was framed.

By its express provision a member who "at the time of his demise was not indebted to his council for moneys paid on his account by said council to the order" is a member in good standing "for the purpose of claiming endowment." Nothing is here said about suspension, or non-suspension, or re-instatement, or anything else, save the one requirement of non-indebtedness. Such an one shall be "deemed" in good standing for the purpose of enabling his beneficiary to claim endowment, whatever his standing may be for other purposes. If mere suspension at the time of death defeated the right to endowment, we should expect to find it so stated here if anywhere, but nothing of the kind appears.

Now unless these provisions of article nine are modified in some way by other provisions in the rules and laws of this order, it follows that O'Grady at the time of his death was, by an express rule of the defendant, a member of this order "in good standing for the purpose of claiming endowment," notwithstanding his suspension, provided he was not at that time indebted to his council in any way.

The defendant claims that the language of section third of article nine is changed and modified by section five of article ten, and by the rule passed in June, 1889, hereinbefore recited. These provide in substance, as we have seen, that a suspended member before re-instatement shall have no claim of any description against the order, and shall not be entitled to any of the privileges of membership. We think the defendant is mistaken in this claim.

In the first place, it cannot be reasonably supposed that the framers of these rules, having with great precision defined what the phrase "good standing" meant, as one of the essential conditions of the right to endowment, would in the next and relatively unimportant article undo what

they had so carefully done and leave the phrase "good standing" as before, without definition.

In the next place, neither section five of article ten, nor the rule passed in June, 1889, in express terms or by necessary implication modify or change section three of article nine, and nothing less than this should authorize the inference that they were intended to have any such effect. In article ten the framers of these rules were dealing with penalties generally, and chiefly as they affected the status of the member during his lifetime. They might reasonably enough here provide that suspension should deprive him of the other and minor rights and privileges of membership, in order to induce him to comply with the conditions of reinstatement. In article nine they were dealing chiefly with the right of the beneficiary to the endowment and with the condition of things at and after the death of a member when re-instatement was out of the question. In it they carefully and specifically provided for the only things that would defeat the right of the beneficiary to the endowment, and mere suspension was not one of them.

We think it would be unreasonable to hold that the general language of section five of article ten was intended to include the claim to endowment, which as befitted its importance had already been dealt with specifically and fully in a separate article. We think it more reasonable to hold that the specific language of article nine qualifies and limits the general language of article ten. In short, a careful scrutiny of the rules and laws of the defendant leads us irresistibly to the conclusion that the mere fact that a suspended member died before re-instatement in no way affects the right to endowment.

This view is further strengthened by a reference to the form of indorsement required to be made by the district deputy supreme knight upon the death certificate. On the death of a member it is made the duty of that officer to examine the books of the financial secretary to see that no injustice has been done to the member, and to indorse on the death certificate the following:—"I hereby certify that

Brother ———— has paid all legal demands against him as provided in general laws of the order, and is *therefore* entitled to endowment as provided in the constitution." Here again the right to endowment seems to depend solely on non-indebtedness.

For these reasons we think the plaintiff is entitled to the endowment, provided O'Grady at his death was in no way indebted to his council, and whether he was or not is the only remaining question.

To begin with, we think if O'Grady under the circumstances had the right to make the payment, his beneficiary might do so for him. There is nothing in the laws or rules, so far as we can see, to prevent this. But after a careful examination of the laws and rules of the order, we can discover nothing that prevents a suspended member from paying his assessments and dues after the time for payment has passed. The rules do expressly provide that the mere payment of back assessments or dues shall not effect a reinstatement of a suspended member, but they nowhere prohibit the payment of such assessments and dues. Indeed they contemplate and provide for just such cases, as was perfectly natural and reasonable. This being so, payment of demands in arrear was a matter entirely between the member and his council. If he chose to pay such arrearages, and his council accepted the payment, the indebtedness of the member was paid.

On the 29th of August, 1890, O'Grady was, we think, within the meaning of the rules, "indebted to his council for moneys paid on his account by said council to the order." In the evening of that day the indebtedness was paid and the payment was accepted and is still retained. At the time of his death then, he was not indebted in any way to his council, and so came squarely within the class whose beneficiaries are entitled to endowment.

The result at which we have thus arrived works no injustice to the defendant or its members; for, regarding the endowment as a kind of insurance, it has received all the premiums which the deceased agreed to pay therefor and

still retains them. It will be doing just what it agreed to do, and upon full consideration, if it is compelled to pay the plaintiff. If the construction here put upon its rules shall lead to any evil results, the rules can be readily changed.

In the view here taken of this case it becomes unnecessary to consider any of the other questions raised upon the record.

For the reasons given the judgment of the court below is erroneous, and it is reversed.

In this opinion the other judges concurred.