## Richmond.

## THE UNITED MODERNS v. RATHBUN AND OTHERS.

### January 18, 1906.

1. EVIDENCE—*Constitution and By-Laws of Corporation—Knowledge of Member—Changes—Burden of Proof.*—Members of a beneficial society are presumed to know its constitution and by-laws, and, after they have been proved, if a member claims that there has been a change in them affecting his rights the burden is upon him to prove it.

2. INSURANCE—*Benefit Society—Effort to Settle—Case at Bar.*—The evidence in the case at bar shows that sufficient efforts were made, without avail, to secure a settlement of the liability on the policy in suit from the order issuing it before resorting to the courts, and a sufficient compliance with the provisions of the policy requiring a presentation of the claim and the proof thereof to certain designated functionaries, and the exhaustion of all remedies within the order before taking any other proceedings to enforce payment.

3. INSURANCE—*Benefit Society—Arrears for Dues—Forfeiture—Waiver—Case at Bar.*—The evidence in this case shows that at the time of the death of an assured he was in arrears for premiums due on his policy, which by the express terms of the policy worked a forfeiture and there is no sufficient proof of a waiver on the part of the company issuing the policy.

4. APPEAL AND ERROR—*Decision by Trial Court Without Jury—Reversal by Appellate Court.*—Where an action is heard by the trial court, without the intervention of a jury, and its judgment is reversed by this court, such judgment will be entered here as the trial court ought to have rendered, just as is done where the cause is heard in the trial court on a demurrer to the evidence. No new trial is awarded.

Error to a judgment of the Circuit Court of Elizabeth City county, in a proceeding by motion. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Jones & Woodward,* for the plaintiff in error.

*S. Gordan Cumming,* for the defendants in error.

Keith, P., delivered the opinion of the court.

Plaintiff in error, The United Moderns, a beneficial society, issued a policy of life insurance to Frederick G. Rathbun, for the benefit of his infant children, for the sum of $1,000.

On becoming a member, as appears from the policy, Rathbun stipulated that he would "comply with all and singular of the Constitution, Laws and Regulations of this Order," and the policy further provided that "the member shall not be personally liable for dues or assessments, but a failure to pay shall forfeit all right to benefits as provided in the Constitution and laws aforesaid." The certificate of insurance also contained the following statement signed by Rathbun: "This certifies that I accept the within certificate and the benefits conferred, fully understanding and agreeing that the same is to be and remain a liability upon the order only upon condition:

"First. That the statements made by me in my application for membership and to the medical examiner are true;

"Second. That I pay or cause to be paid all assessments, dues or money payable to the order, promptly, on or before the day the same becomes delinquent.

"Third. That I fully comply with the Constitution, Laws and Regulations of the Order. The within certificate to be and remain null and void for and during any such failure or default upon my part, as aforesaid."

Article 13, section 1 of the Constitution of the order provides: "The first monthly payment falls due on the date of the issuance of the beneficiary certificate, and thereafter one monthly payment shall fall due on the first day of each succeeding calendar month, and must be paid on or before the last day of the month in which it falls due, and no notice shall be required from the Order for such payment." And section 2, that "Members failing to make all payments as they become due, do elect, by reason of such failure, to terminate their membership in the Order, and shall thereupon stand suspended by the non-payment of the call, and, under the law, do elect and agree, by reason of such failure, not to hold the Order for any liability whatsoever, and do thereby surrender all rights as a beneficiary member; provided, that if the member is in good health and shall pay any past due payment within ninety days of the time it became due, together with all other payments that may have become due in the meantime, and shall also accompany his payment with his certificate that he is in good health, and the local financier shall remit such payment to the supreme recorder within fifteen days after receipt of same, his beneficiary certificate shall become reinstated from the date of payment, provided that the member is in fact in good health at the time, but the fact of payment and furnishing certificate shall not bind the Order unless the member was in fact in good health."

Just here it may be proper to notice an objection made by defendants in error to the proof of the constitution and by-laws, which is, that it does not appear that they were the constitution and by-laws in force at the time the certificate of membership was issued to the decedent.

The constitution and laws of the order were proved. The members are presumed to know the constitution and by-laws, and if a change had been made in them affecting the rights of defendants in error, the burden was upon them to introduce proof to that effect. Greenleaf on Ev. (15 Ed.), § 41.

On the 14th of September, 1903, the insured died, and a demand having been made by the beneficiaries in the policy upon the · association payment was refused upon the ground that the insured was not, at the time of his death, a member in good standing, but had forfeited his rights under the policy by failure to pay the premiums as they fell due. Thereupon suit was instituted by the beneficiaries by their next friend in the Circuit Court of Elizabeth City county, which terminated in a judgment against the plaintiff in error for the full amount of the policy, and to this judgment a writ of error was awarded by this court.

The first error assigned is that plaintiffs in the court below had not complied with the terms of the policy, which provides that "Every member and the beneficiary of every member shall before instituting any suit in the civil courts of the country against the order, first present their claims or contentions, together with the facts and proofs relied upon, to the proper officer, committee or authority of the order entitled to consider the same, and, in the event of an adverse ruling by any subordinate authority to which an exception is taken, shall exhaust all remedies within the order by appeal as a preliminary to any other proceedings."

We think the evidence shows a sufficient compliance with this provision, and that sufficient efforts to secure a settlement from the order without suit were made and proved unavailing; that the beneficiaries were justified in resorting to the courts for relief, and this assignment of error is therefore overruled.

It appears from the evidence that the insured was an organist in St. John's church, in the town of Hampton; that in the spring and summer of 1903 his health became impaired, and that he failed to pay certain assessments promptly, as they fell due; but that, upon the payment of the money and the production of a physician's certificate as to the condition of his health, he was reinstated, and continued to pay his dues, though at intervals he would fall a month or two behind, and would then be reinstated in accordance with the rules of the order.

About the middle of July he went to Lebanon, Ohio, and entered a sanitorium, the church of which he was the organist, in consideration of his long and faithful service in that capacity, agreeing to continue to him the payment of his salary.

The financial agent of the association mentioned to the rector of the church that there was a premium due on Rathbun's policy, and the rector told him that he knew Rathbun was sick, and that, being sick and having unusual expenses, he was in straits for money, but that the vestry of the church and he (the rector), personally, did not mean that this insurance should lapse; and thereupon the rector and the agent went to the treasurer of the church to make arrangements with respect to the payment of the dues. It seems that both the rector and the financial agent of the order looked upon the arrangement as a continuing one. The treasurer advanced the money, and put the slips or tickets which the agent of the order had brought with him into his private cash-drawer, and it appearing that the salary of Rathbun as organist had been paid up to the first of July, the treasurer carried the tickets over until the next payment.

On the 1st of August the treasurer of the church drew a check in favor of Mrs. Rathbun, mother of Mr. Frederick G. Rathbun, for the amount of his July salary, without reserving anything (as perhaps he should have done under the arrangement) for the payment of the premiums. To the little girl who carried the check to Rathbun's mother, he said: "Tell your grandmother that I hold certain slips for insurance of your father's and I suppose she wishes to cash them out of this check." In about an hour afterwards Mr. Rathbun, the father of the insured, came to the office, paid the money and took the slips away with him. On the 1st of September the treasurer paid the amount of the August salary.

Some time in August the financial agent of the order again came to the treasurer of the church to collect the assessments then due, in accordance with the arrangement before entered

into.    The treasurer told him that he had already sent a check to Mrs. Rathbun, the mother, and he had no doubt that if he would present the slips to her they would be paid, and asked him to see her.    He said to the agent that if she did not pay them to come back and let him know and he would pay them. This the treasurer says was the substance of what occurred between them; that after Rathbun died some one said to him that they were sorry the insurance in the Moderns had lapsed, and he said he had attended to that—that "I told Mr. Guthrie to see Mrs. Rathbun and if she didn't pay it to come back to me, and he had never been back."

The financial agent went from the office of the treasurer to the home of Rathbun's mother, as he had been directed to do, to collect the premiums for July and August.    The money was not paid, and the reason for it will fully appear from the testimony of the rector, who after Rathbun's death and burial had a conversation with the mother of the deceased, who said to him: "I was deceived in Fred's condition.    He kept on writing that he was better, and when Mr. Guthrie came to me we were so hard up for money—Fred had written for money, and had said that he would be home in a few days."    The rector stated that Rathbun wrote him the same kind of a letter—that he was improving; that he kept his mother in the dark, and she was under the impression that he was better; that "she thought it would be all right when Fred got home— he assured her he would be home in a few days—so she just let it slip.    So that was her excuse for not doing what she knew she might have done—gone to Mr. Heffelfinger or come to me— if she had known her son was in danger."

The whole of the sad story may be summed up as follows:

The health of the insured failed, and he was compelled to go to a sanitorium.    He fell in arrears in the payment of his dues and his friends undertook to make an arrangement by which his salary should be continued, and the premiums upon his insurance paid.    The necessities of his family were urgent,

and instead of reserving a part of his salary to meet the exigency, the whole of it was paid to his mother and father for the support of his infant children, in reliance upon the hope that his health being restored, he would soon be able to return, present the necessary certificate of a physician, as he had before done, pay the money, and be reinstated to his rights in the order. But these hopes were disappointed. He died, and, at the time of his death, as the proof shows, was delinquent in the payment of certain dues.

Granting that the financial agent had the power to bind the association to look to the treasurer of the church for the payment of the dues, it is plain that the departure from the agreement was not due to any fault on the part of the association. Indeed, it cannot be said that there was anything to censure in any one connected with the transaction. Had either the rector or the treasurer known the situation, it is certain that it would have been promptly relieved. The misfortune is due to the urgent needs of the mother who had the care of the infant children upon her hands, and who listened, as all of us do, to the delusive promises of hope. But the hard fact remains that at the time of his death Rathbun was in default in the payment of dues for July and August, and there is in our judgment no sufficient proof of waiver on the part of the company.

As was said in *Knights of Honor* v. *Oeters,* 95 Va. 610, 29 S. E. 322; "There can be no recovery on the certificate on his life which was payable only on condition of his being in good standing at the time of his death." And in the same case, speaking of benefit societies, it is said: "They are not organized for the purpose of making money, but for fraternal and benevolent objects. Their schemes of benevolence, by which they aim to provide benefits for their members in time of sickness, and indemnity to their families upon their death, cannot be maintained, unless the rules and regulations prescribed by their constitution and by-laws for the attainment of these

objects are substantially upheld.   This it should be the policy of the law and the aim of the courts to do.   Otherwise, their their schemes for furnishing to the working classes and men of moderate incomes a cheap and simple substitute for life insurance cannot be accomplished."

In Bacon on Benefit Societies, sec. 354, it is said:   "If the policy is conditioned to be void if the stipulated premium be not paid at the appointed day, time is of the essence of the contract and if the premium be not paid the policy is void unless the condition be waived.   A benificiary takes the policy subject to the condition requiring prompt payment of premium, and no notice of lapse is necessary."   See also sec. 355.   *Metropolitan L. Ins. Co.* v. *Hall, ante* p. 572; 52 S. E. 345.

The case was submitted to the judge, without a jury.   He passed both upon the law and upon the evidence; and it is heard before us as though there had been a demurrer to the evidence.   It is our duty to enter such judgment as the Circuit Court should have rendered, and we are forced to the conclusion that there was no liability upon the plaintiff in error, and that the judgment should have been rendered in its favor.

*Reversed.*