# Richmond.

Knights of Columbus v. Burroughs' Beneficiary.

January 16, 1908.

1. Appeal and Error—*Record—Instructions—Bills of Exception.*—Instructions not made a part of the record by a proper bill of exception in the trial court cannot be considered by this court.

2. Benefit Societies—*Non-Payment of Dues—Forfeiture.*—The non-payment of dues and assessments in a beneficial association organized for the purpose of fraternal insurance, and not for gain or profit, tends to the destruction of the association, and is a violation of the member's duty as a corporator. Not only has the association an inherent right to expel members for non-payment of dues and assessments, but, from its nature and necessities, it has a right to provide in its laws that such non-payment, within a specified time after notice, shall, without personal or other notice to the delinquent member, *ipso facto*, work a forfeiture of all the member's rights of membership.

3. Benefit Societies—*Membership—Forfeitures—Notice of By-Laws.*—A party who takes out a policy in a mutual benefit society becomes a member of the society, and is bound by the rules and provisions of its charter and the by-laws lawfully made in pursuance thereof, and is conclusively presumed to have knowledge of them all. If these provide that the non-payment of dues and assessments for a specified time after notice shall *ipso facto* forfeit his membership in the society, the provision is binding on him, and, if not waived, no further steps on the part of the society are necessary to render the forfeiture effective.

4. Benefit Societies—*Forfeitures—Irregular Payment of Dues by Local Council—Case at Bar.*—The by-laws of a benefit society provided that any member should *ipso facto* forfeit his membership who failed, neglected or refused to pay his assessments within a time specified in the by-law. They also provided that no money should be paid or transferred from the treasury of any council except upon

a two-thirds .vote of the members present and voting at a regular meeting held after notice at a previous meeting of an intention to pay or transfer such money. A local or subordinate council kept alive the membership of all its members by paying their dues by checks drawn by the financial secretary on the treasurer against the insurance fund, but not in accordance with the by-law last above mentioned. A member of a local council, whose dues and assessments had been thus paid, had failed to pay his assessments for six months, though notified, on an average, twice a month. Some time afterwards he became ill, and four days before his death there was paid to the financial secretary of the local council the full amount of all dues and assessments theretofore advanced for him by the local council. Upon his death, the society refused to pay the amount of his policy on the ground that his policy was forfeited by reason of his failure to pay his dues and assessments within the time required by the by-laws.

*Held*: There can be no recovery on the policy. The member by failing to pay his assessments as required by the constitution and by-laws *ipso facto* forfeited his membership in the society. The subordinate local council, in undertaking to make good the delinquencies of its members, by warrants drawn by its financial secretary on the insurance fund, without complying with the by-laws of the society, acted without authority; that in so doing it was the agent of its members, and not of the society, and the society having received the money in ignorance of the facts, has not waived the forfeiture, and is not by its conduct estopped to set it up in defense to this action.

Error to a judgment of the Corporation Court of the city of Alexandria in an action of assumpsit. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Crandall MacKay* and *Wm. B. Reilly,* for the plaintiff in error.

*John M. Johnson* and *Leo P. Harlow,* for the defendant in error.

Keith, P., delivered the opinion of the court.

This suit was brought by Mary A. Burroughs, as beneficiary of William J. Burroughs, deceased, in the corporation court of the city of Alexandria, against the Knights of Columbus, a corporation incorporated under the laws of the state of Connecticut, and doing business in the state of Virginia. The defendant appeared and pleaded non-assumpsit and two special pleas. The plaintiff took issue upon the first plea and filed special replication to the second and third pleas. Issue was joined thereon. The jury gave a verdict for the plaintiff for the sum of $1,000. The court rendered judgment upon that verdict, and the case is now before us upon a writ of error.

The plaintiff in error here (defendant in the court below) assigns as error the ruling of the court in granting three instructions asked for by the defendant in error, as shown by bill of exception No. 1. Upon referring, however, to that bill, it appears that only one instruction is mentioned, which is in the following words:

"The jury are instructed that the local lodge had the power to advance assessments for its delinquent members, unless there was something in the constitution and by-laws of the national or subordinate council prohibiting such advances."

If other instructions were given at the instance of the plaintiff, they are not properly part of the record and cannot be considered by this court. At the conclusion of the printed transcript of the record, it does appear that three instructions were granted at the instance of plaintiff. We have quoted instruction No. 1, and instructions Nos. 2 and 3, not having been embraced in the bill of exception, cannot be considered by us.

From bill of exception No. 2 it appears that the court was asked to grant plaintiff in error three instructions, which the court refused to do, and its refusal is assigned as error. These instructions are as follows:

"The court instructs the jury that if they believe from the evidence that William J. Burroughs failed, neglected or refused to pay his assessment for the months of April, May, June, July, August and September, 1904, in the time prescribed by the by-laws, that being the regular monthly assessment due by him, and after he had been requested to pay same by Richard L. Carne, Jr., the financial secretary of Fitzgerald Council No. 459, Knights of Columbus, that then he forfeited his membership in the Knights of Columbus, and the plaintiff cannot recover in this action.

"The jury are further instructed that, as a matter of law, the receipt of said money by the said Carne, financial secretary of Fitzgerald Council, No. 459, Knights of Columbus, on behalf of said William J. Burroughs, was without right or authority on his part, and that the acceptance by him of said money was not a waiver of the conditions by the said defendant under which said benefit certificate was issued. To the contrary each and every benefit certificate is issued only upon the conditions stated in and subject to the constitution and by-laws of the Order of said Knights of Columbus.

"The jury are further instructed that the said Richard L. Carne, Jr., as financial secretary of the said Fitzgerald Council No. 459, Knights of Columbus, and said Fitzgerald Council No. 459, Knights of Columbus, in administering the powers and duties provided under the laws of said defendant, were not the agents of the said order, but the agents of the members thereof, and that the acceptance of said money by said Carne after said forfeiture of membership of said William J. Burroughs, did not create, or cannot be construed to create any liability on the part of said defendant to said plaintiff. Therefore, the verdict should be for the defendant."

The evidence before the jury, in the light of which these instructions are to be considered, was as follows: The Knights of Columbus is a corporation organized under the laws of the state

of Connecticut, for the purpose of carrying on a system of fraternal insurance, by means of subordinate lodges located throughout the various states of the Union. Of these subordinate lodges one was known as Fitzgerald Council, No. 459, located in Alexandria, Virginia. One of the members of this council was William J. Burroughs, who made application for membership on April 14, 1902, and to whom a benefit certificate was issued on the 25th day of June, 1902. By the terms of this certificate, Burroughs agreed to comply with all the requirements and conditions therein set out, and also those contained in the original application made by him for membership in the organization. He agreed to comply with the constitution, laws, rules and regulations governing the defendant order; and the defendant agreed to pay to the beneficiary, plaintiff in this action, Mary A. Burroughs, the sum of $1,000, provided the said William J. Burroughs was at the time of his death, a member of said order in good standing; all of which conditions and provisions were accepted and subscribed to by Burroughs in his benefit certificate. Burroughs, during the time of his membership, agreed to pay certain assessments, as provided for in defendant's laws, Secs. 85 and 89. There was due from Burroughs an assessment for the month of April, 1904, for the sum of eighty cents, which was not paid; nor were the assessments paid for the months of May, June, July, August and September, 1904. Section 167 of plaintiff in error's by-laws provides: "Any member of this order shall *ipso facto* forfeit his membership in the order, who fails, neglects or refuses to pay his proportionate part of any assessment for thirty days from the date of mailing or transmitting the notice for assessment by the secretary of his council, or of the regular monthly assessment, within thirty days from the first day of the month in which levied."

By section 217, it is provided: "A member of the order suspended for non-payment of assessments, dues or fines, wishing

to be reinstated, must within one year from the date of suspension, make written application to and at a meeting of the council from which he was suspended, upon a blank issued by the order. Said application shall be balloted upon and forwarded by the financial secretary to the national secretary, with the approval or disapproval of the council recorded thereon, and with the certificate of the financial secretary that all arrearages of assessments and dues have been paid. If an insurance member, the committee on reinstatement shall then act upon said application, and the applicant can only be reinstated upon such conditions as said committee may direct and determine, provided if such application is made within three months from date of forfeiture of membership, the provisions of this section relative to ballot and approval by the council, shall not apply. If an associate member, no action of the committee on reinstatement is necessary. Upon approval of the council and otherwise complying with this section he is reinstated."

By section 125 of the by-laws, it is provided: "No money shall be paid or transferred from the treasury of any council (except such moneys as the council is called upon to regularly pay for its current expenses and as provided by the laws of the order, or for purposes approved by the national council or board of directors) unless by a two-thirds vote of the members present and voting at a regular meeting held subsequent to a regular meeting, at which notice in writing of a resolution or intention to pay or transfer such money and the purposes and amount to be paid or transferred shall have been given and regularly read."

The benefit certificate copied in the record appears to have been issued on the express condition that the statements made by the applicant in his application for membership are warranted as true and made a part of the contract, and upon the further condition "that said member complies in the future with the constitution, laws and regulations now governing said order,

or that may hereafter be enacted to govern said order." And in section 12 of his application he covenants that he "will conform to and abide by the constitution, by-laws, rules and regulations of said order, and of any council thereof, of which I may at any time be a member, which may now be in force, or which may at any time hereafter be adopted by the proper authorities, or submit to the penalty now or hereafter provided for the breach or violation of such constitution, by-laws, rules or regulations."

William J. Burroughs died on October 15, 1904. He had failed to pay his assessments for the months of April, May, June, July, August and September, 1904. It was shown by the evidence of the financial secretary of Fitzgerald Council that it was the custom of that council to keep up the dues of members who were in arrears—to use his own language: "The council ordered me to carry every man. That was passed at every meeting for every assessment. It was always paid within thirty days. Before I would have a chance to read the delinquent list, a motion would be made that we carry the delinquents"—that this action was taken by the local board, knowing that some of the members were delinquent, and before a list of the delinquents could be read a motion would be made to carry them all. These payments for Burroughs and other delinquents were made by warrants, drawn on the treasurer against the insurance fund.

It appears from the evidence of the financial secretary, that he called upon Burroughs frequently for his assessments, and he would do so upon an average of twice a month—at his home, at his place of employment and elsewhere.

The defendant in error proved by another witness that it was the custom for the secretary of the national council to forward to the Fitzgerald Council a statement of the amount due for insurance members, and the secretary of the local council would then forward the amount by check; that the local lodge kept

alive the membership of all its members by paying their dues; that up to the time of the death of Burroughs the local council had carried members from month to month and paid the assessments out of the general fund; and that Burroughs had been asked to meet the assessments due by him, and he always replied that he would do so at the next meeting—he never in terms refused to pay.

It further appears that the secretary of the national council had no knowledge of the custom of the local council, and when he received checks was not aware that they were in part for money advanced to meet the assessments of delinquent members of the subordinate lodge.

Some time after Burroughs, the insured, became ill, and four days before his death, to-wit: on October 11, 1904, the sum of $10.40 was paid to the financial secretary of the Fitzgerald Council, in settlement of the amount that lodge had theretofore advanced to the national council on account of assessments against William J. Burroughs.

The Knights of Columbus is a beneficial association, organized for the purpose of carrying on a system of fraternal insurance and not for purposes of gain and profit. The non-payment of dues and assessments, in such an organization, is subversive of the fundamental object of the society, tends to its destruction, and is a violation of the member's duty as a corporator. Not only has such a society an inherent right to expel members for non-payment of dues and assessments, but, from its nature and necessities, it has a right to provide in its laws, that such non-payment, within a stipulated time after notice, shall, without personal or other notice to the delinquent member, *ipso facto,* work a forfeiture of all the member's rights of membership. Niblack on Ben. Soc. & Accident Ins., (2nd ed.) section 39.

In *Klein* v. *Ins. Co.,* 104 U. S. 88 , 26 L. Ed. 662, it is said: "A condition in a policy of life insurance, that if the stipulated

premium shall not be paid on or before a certain day, the policy shall cease and determine, is of the very essence and substance of the contract. Against a forfeiture caused by failure to pay, a court of equity cannot relieve."

And in *Thompson* v. *Ins. Co.,* 104 U. S. 252, 26 L. Ed. 765, it is said: "Where the policy provides that it shall be forfeited upon the failure of the assured to pay the annual premium *ad diem,* or to pay at maturity his promissory note therefor, the acceptance by the company of the note, although a waiver of such payment of the premium, brings into operation so much of the condition as relates to the note." "Prompt payment," said the court, "and regular interest constitute the life and soul of the insurance business; and the sentiment long prevailed that it could not be carried on without the ability to impose stringent conditions for delinquency. More liberal views have obtained on this subject in recent years, and a wiser policy now often provides express modes of avoiding the odious result of forfeiture. The law, however, has not been changed, and if a forfeiture is provided for in case of non-payment at the day, the courts cannot grant relief against it. The insurer may waive it, or may by his conduct lose his right to enforce it; but that is all."

In *Metropolitan Life Ins. Co.* v. *Hall,* 104 Va. 572, 52 S. E. 345, it is said: "An insured should look at his policy and conform to it, and limitations of the agent's authority should be effective, unless the insurance company, by a course of business or otherwise, has waived the limitation on the agent's power of waiver. An agent to collect premiums has no authority to extend the time of payment of an over-due premium, and where the policy declares a forfeiture for failure to pay at maturity, and forbids waiver by agents, their agreements to extend time of payment do not, as a rule, bind the company." See also *United Moderns* v. *Rathbun,* 104 Va. 736, 52 S. E. 552.

In *Mut. F. Ins. Co.* v. *Miller Lodge, I. O. O. F.,* 58 Md. 463,

it was held, that "When a party takes out a policy in a mutual insurance company, and the contract is complete, he at once becomes a member, and is bound by the rules and provisions of the charter and by-laws of the company, and he is presumed to have knowledge of them all. * * * Although there may be a habit or usage of the company to give notice to the members of the amount of the annual interest, and the time of payment; yet, if, no obligation to give such notice is created by the charter or by-laws of the company, there is nothing in such habit or usage that could impose such a duty upon the company, with the consequences of making the notice a condition precedent to the right of the company to receive the interest on the premium note, according to the contract of insurance. The company is under no obligation to give such notice, and assumes no responsibility in giving it. The duty of the assured to pay at the day is the same, whether notice be given or not."

Applying the principles of that case to the one before us, there can be no doubt that the insured was bound by the rules and provisions of the charter and by-laws of the order of which he was a member; and that he was conclusively presumed to have knowledge of them all; with this difference between the two cases, that in that under consideration there is no evidence of any habit or usage of the national council to grant indulgence to its members, or to give them notice of delinquency; or that there was any obligation upon its part to do so, or any knowledge that any such usage or habit had grown up in and was practiced by the local lodge.

In *Rood* v. *Ben. Asso.,* (C. C.) 31 Fed. 62, it is held, that where the laws of a benefit society provide, that if a member neglects or refuses to pay any assessment for a specified period, he shall cease to be a member, and the secretary shall strike his name from the roll, such laws are self-executing, and the member so omitting to pay loses his rights as a member, although the secretary does not strike his name from the roll.

In *McDonald* v. *Ross-Lewin,* 29 Hun (N. Y.) 87, section 1, art. 10, of the by-laws of the association, provided that, if any member should neglect to pay any dues or assessments required by the by-laws, "that then and in such case such membership shall cease and determine at once without notice, and all claims be forfeited to the association." It was held, that the neglect to pay an assessment for thirty days after notice thereof, *ipso facto,* determined the membership of the delinquent.

In *Illinois Masons' Benevolent Society* v. *Baldwin,* 86 Ill. 479, it was held: "Where a certificate of membership in a society, which provides for paying a certain sum of money on the death of the member, also requires the party to pay all assessments against him within ten days after notice thereof, or the certificate shall be null and void, and the by-laws of the society provide that a party failing to pay his assessments within ten days after notice shall forfeit his membership and all benefits therefrom, and the party, in his application for membership, agreed to be bound by the rules and regulations of the society, a failure or neglect to pay an assessment, within ten days after notice of the same, will prevent any recovery upon the certificate upon his death, unless there is shown a waiver of the forfeiture, or facts estopping the society from insisting upon the same;" that "when a party in default in the payment of assessments against him, as a member of a benevolent society, has not been induced by the society or its agents to do, or to omit to do, any act which he would not otherwise have done or omitted, the society will not be estopped from insisting upon a forfeiture of his rights for his neglect to pay. Proof of a custom is never admitted to overcome or change the express terms of a contract. Proof by a witness that in certain instances known to him a forfeiture was not exacted, without showing this to be uniform and its duration, is not sufficient to show a custom."

While the authorities concur in conceding the right of bene-

ficial societies in their constitutions and by-laws, and in their contracts of insurance, to impose conditions, a failure to comply with which is visited with a forfeiture of all rights in the society, there is some apparent diversity of opinion among the cases, as to whether or not it is necessary for the society to give notice or take any formal action in order to make the forfeiture effectual. But it will be found, we think, upon a careful examination of the authorities, that the difference really grows out of the construction of the constitution and by-laws of the particular society. If, for instance, the laws of the society provide that the non-payment of an assessment, continuing for a specified time, shall operate *ipso facto,* to determine the connection between the society and the delinquent member, and to forfeit his rights as such member, we know of no case in which the power of such a society to make and enforce such a rule has been denied; but where, in accordance with the terms of the constitution and by-laws of the society, anything is to be done on the part of the society itself to make the expulsion of the member complete to terminate his rights and interests in the society, the courts require a strict compliance with the course of procedure prescribed, and are astute to discover any departure which will enable them to interfere and prevent a forfeiture.

For example, in *Madeira* v. *Merchants' Exchange Mut. Ben. Soc.,* (C. C.) 16 Fed. 749, where a certificate of membership in the nature of a life policy, issued by the mutual society, provided that the amount of insurance therein specified should be paid in case of the member's death to his beneficiary, on condition that he had "complied with the by-laws of the society," and the by-laws provided that members should forfeit their membership if they failed to pay their dues within thirty days of the forfeiture, or facts estopping the society from insisting after publication of an assessment, and it appeared from the evidence that the assured had failed to pay an assessment within

the time specified, and that it remained unpaid at the time of his death, it was held that he had forfeited his membership, and that there could be no recovery under his certificate.

So, in *Borgraefe* v. *Supreme Lodge, Knights and Ladies of Honor,* 22 Mo. App. 127, it was held, that "Under a law of a benevolent society, which makes the non-payment of assessments for a given period after notice operate as a suspension *ipso facto* of the delinquent member, it is not necessary that the suspension should be judically determined by any judicatory of the order."

In Bacon on Ben. Soc. & L. Ins., Vol. 2, sec. 385, after a full consideration of the subject and the citation of numerous authorities upon the one part and the other, the conclusion is reached, that "If, by the laws of the society, non-payment of an assessment operates as a forfeiture, time is of the essence of the contract, and the member must elect, every time he is called upon to pay an assessment, either to pay within the stipulated time, or suffer the penalty of loss of membership and its benefits by neglecting or refusing to pay within that time. *   *   * The question is one of construction, and we give in a note the cases not heretofore cited, holding that *ipso facto* suspension resulted from non-payment, and also those holding to the contrary." An examination of these diverse authorities will show that in every case in which it was held that the failure to pay did not operate a suspension *ipso facto* there was something in a just construction of the constitution and by-laws which showed that affirmative action on the part of the society was necessary; in other words, that in all such cases, the non-payment of the dues and assessment did not, under the particular constitution or by-laws, operate *ipso facto* and by its own force to terminate membership in the society.

In concluding the discussion of this branch of the case, we shall refer to section 289 of Niblack on Ben. Soc. (2nd ed.): The whole of the section is pertinent, but too long for quotation. It is in part as follows: "However abhorrent it may be to all

reason to permit the expulsion of a member without notice and hearing, or opportunity to be heard, for an alleged violation of his duty as a citizen or a corporator, and notwithstanding the fact that a by-law providing that on such charges a member may be expelled by a vote of the society in his absence and without notice is illegal and invalid, it may be laid down as certain that, from the very nature of the plan of mutual assessment insurance, it is proper for mutual benefit societies to provide that non-payment of an assessment within a specified time after notice shall, *ipso facto,* work a forfeiture of the insurance and an expulsion of the defaulting member. It is true that where such stringent clauses of forfeiture are made a part of the contract, they are usually accompanied by provisions for the reinstatement of the delinquent member upon equitable terms, but such provisions are not necessary to the validity of the terms of forfeiture. These societies depend exclusively upon the payment of assessments to meet their losses and expenses, and only by the prompt payment of assessments by their members can they maintain their solvency and responsibility. The only practical way which they have of enforcing payment of their assessments is by forfeiting insurance contracts and expelling the delinquent members for non-payment, and this power is necessary for the existence of such societies. To hold that specific notice to the member must be given of the time and place at which he will be called upon to answer the charge of having failed to pay his assessment within the stipulated time, and that a judicial act of the society expelling the delinquent member is necessary in order to terminate his rights under the contract, and to hold further that such proceedings may not be waived by express contract of the parties, would be to extend unduly the period of insurance beyond the time for which a consideration had been paid, would offer encouragement to careless members, and greatly impair the ability of the societies to carry on the work for which they are organized."

In *Knights of Honor* v. *Oeters,* 95 Va. 610, 29 S. E. 322, Judge Riely, speaking for this court, said: "The forfeiture of a certificate in a benefit society is not waived by the fact that the financial reporter of a subordinate lodge. is in the habit of receiving payment of assessments after the end of the month for which they are levied, and within which they are payable, under the penalty of suspension and a forfeiture of the benefit certificate, when there is no evidence that the supreme lodge, which is sued on the certificate, is aware of such habit."

In *Supreme Council Royal Arcanum* v. *Taylor,* (C. C. A.) 121 Fed. 66, the court says: "A fraternal benefit association cannot be deemed to have waived a condition of its contract with a member requiring the payment of an assessment on or before the last day of each calendar month, without notice, and which provided that in default of such payment the member should stand suspended, and prohibited the collector of the local council from receiving an assessment after the day it became due; nor was it estopped to insist upon such suspension, which occurred some days before the member's death, because on some previous occasions he had paid after the close of the month, where that fact was not reported to the local council nor known to the supreme council, but where, in fact, the assessment had in each case been advanced for him by the collector under an arrangement between them."

In *Modern Woodmen of America* v. *Tevis,* (C. C. A.) 117 Fed. 369, the court says: "Stipulations to insure the prompt payment of benefit assessments constitute the substance and the essence of insurance contracts of beneficial associations;" and that "the insured and the beneficiaries under contracts with insurance companies and beneficial associations are charged with knowledge of the limitations upon the powers of the agents of the companies which are found in the policies or certificates or in the by-laws or applications which are a part of their contracts, and they are bound by these limitations."

In that case the by-laws of the Modern Woodmen of America,
which constituted a part of the contract with its members and
beneficiaries, provided that a member who fails to pay a benefit
assessment at the time specified for its payment, is *ipso facto*
suspended, and his benefit certificate is thenceforth void; that
he may be reinstated within a certain time, if in good health, by
furnishing a warranty of that fact, and paying his arrearages;
that the clerk of the local camp shall collect and remit to the
head camp the assessments paid in accordance with the by-laws;
that he shall report to the head camp suspended members; that
he is the agent of the local camp and not of the head camp; and
that no act or omission by him shall create any liability or waive
any immunity or right of the society. It was held, that the
clerk of the local camp is the agent of the head camp to collect
and remit the benefit assessments in accordance with the terms
of the by-laws; that his authority is limited by the by-laws, and
the members and beneficiaries are charged with knowledge of
these limitations, because they are a part of their contracts;
and that the clerk of the local camp has no authority by con-
tract, estoppel, or waiver, to bind the society to its members or
beneficiaries either by extending the time of payment of a bene-
fit assessment, or by waiving default in its payment, or by re-
instating a suspended member without a warranty of good
health, in the absence of notice or knowledge of such acts and
acquiescence therein by some of the principal officers of the
head camp.

There is much in that case which resembles the one under
consideration.

In *Jelly* v. *Muscatine City and County Mut. Aid Society,*
120 Ia. 689, 95 N. W. 197, 98 Am. St. Rep. 378, it was held
that "a provision in the constitution of a mutual benefit society
that a member failing to pay his assessment within fifteen days
after being notified by the secretary shall be suspended, is not a
self-executing provision, and a member who has failed to pay

within the time is still in good standing, no action having been taken to suspend him." Construing this provision of the constitution, the court says: "The expression 'shall be suspended,' as the same appears in said article, is declaratory merely of the right of the association to suspend for non-payment of assessments, and it cannot be said that membership or standing has been lost or forfeited as long as the society does not see fit to exercise such right. A mere delinquency of a member of a mutual benefit association to pay dues or assessments does not defeat his good standing as long as he has a right to pay and the association forbears to take action." Citing among other cases *Petherick* v. *Order,* 114 Mich 420, 72 N. W. 262.

In *Warwick* v. *Supreme Conclave, Knights of Damon,* 107 Ga. 115, 32 S. E. 951, it was held, that "the non-payment of an assessment made upon the member for the common benefit fund, which has become due and payable under the laws of the association, will not, *ipso facto,* amount to a forfeiture of the benefit of life insurance provided for in the certificate, it appearing that there is no law or rule of the association expressly providing that such non-payment will of itself work a forfeiture."

In *Puhr* v. *Grand Lodge German Order of Harugari,* 77 Mo. App. 47, it was held that, under the constitution and by-laws of the defendant society, a mere delinquency in the payment of dues does not defeat the good standing of a member. "So long as the member has a right to pay and the lodge forbears to take action, he remains in good standing." The provision of the by-laws in that case was that "Members who owe three months' dues and assessments shall, in the first meeting of the fourth month, be stricken from the membership roll." The court was of opinion, that under that section, the delinquency of the member would not, *ipso facto,* result in a forfeiture of membership until the first meeting of the local lodge in the fourth month after the default; and that a construction which summarily de-

prives the member of his rights is not favored, and it will not be adopted if any other is possible."

In *American Council, O. U. A. M.* v. *National Council, O. U. A. M. of the U. S. of America,* 63 N. J. L. 52, 43 Atl. 2, a by-law provided, that if a member should fail to have his assessments in the hands of the secretary within thirty days from the date of call, he should forfeit his right to receive benefits until all arrearages were paid, and that if thirty days should elapse before all arrearages were paid, the member should be suspended from the department. It was held, that "a failure to pay assessments within thirty days after they became due did not of itself operate to suspend the defaulting member, but that affirmative action on the part of the society was required to produce that result." The court in its opinion laid stress upon the expression "shall be suspended," contending that action is to be taken by the national council for the accomplishment of that result, after the default has continued for the specified time, and until such proceedings are taken and completed, the local council still retains its membership in the department."

All of which goes to show, that, as we before remarked, courts are astute (and we may add properly so) to discover modes of escape from declaring a forfeiture. To the same effect see *Order of United Commercial Travelers* v. *McAdams,* (C. C. A.) 125 Fed. 358; *LaMarsh* v. *Society,* 68 N. H. 229, 38 Atl, 1045.

It will be sufficient to recur to section 167 of the by-laws of the Knights of Columbus to show that there is no room for discussion or doubt as to the effect of a failure to pay an assessment for the stipulated period. "Any member of this order shall *ipso facto* forfeit his membership in the order, who fails, neglects or refuses to pay his proportionate part of any assessment for thirty days from the date of mailing or transmitting the notice for assessment by the secretary of his council, or of the regular monthly assessment, within thirty days from the first day of the month in which levied."

This brings us to a proposition much relied upon by defendant in error. As we understand her position, she did not rely, and under the evidence in this case could not have relied upon any waiver or estoppel upon the part of plaintiff in error. The defendant in error stands squarely upon the proposition, that the Fitzgerald Council had the right to pay, and did pay, the dues and assessments of its members; that the payment of all the dues of all its members by the local council to the national council satisfied all legal demands of the national council; and that, as the amount which the local council had advanced on behalf of Burroughs was during his lifetime paid to and received by it, he died a member in good standing.

In *O'Grady* v. *Knights of Columbus,* 62 Conn. 223, 25 Atl. 111, the construction of the constitution and by-laws of this society, as they then existed (that case having been decided in 1892) became necessary. One of the regulations of the society at that time provided that the endowment should be paid "upon the death of any member  *  *  *  in good standing at the time of his demise," and that a member should "be deemed in good standing for the purpose of claiming endowment who at the time of his death was not indebted to his council." Another article provided, that "members four months in arrears for dues shall be *ipso facto* suspended," and that "members legally suspended shall not be entitled to any of the privileges of membership whatever until reinstated according to law." It was held that the right of the beneficiary of a deceased member to recover the endowment depended on the question whether the member, at the time of his death, was indebted to his council, and not upon the question whether he had been suspended and not reinstated. In that case the member, at the time of his death, was indebted to his council for several assessments, and had been suspended and not reinstated. A few hours before his death his benficiary paid the amount due to the financial secretary of his council and took a receipt for it. It was held that

this payment did not effect a reinstatement of the member; but that it did extinguish his indebtedness to his council, so that at the time of his death, he was not indebted, and his beneficiary was entitled to the endowment.

Since that case was decided, the laws of the order have been amended, and as amended, again came under the consideration of the Supreme Court of Connecticut, in the case of *Coughlin* v. *Knights of Columbus,* 79 Conn. 218, 64 Atl. Rep. 223, where it was held that "The terms of a contract between a member of a benefit society and the society stipulating that the member agrees to subject himself to the constitution and by-laws of the order, are determined by the constitution and by-laws of the order, as existing when the member became a member, and as amended from time to time." It appeared in that case that, notwithstanding the constitution and laws of the society, it had been the practice for a long time of the members of subordinate councils not to pay their monthly assessments until required to do so by a collecting officer appointed by the council, and it had been the practice of its financial secretary to receive the money so paid after the expiration of thirty days from the first day of the month, and not to state in his monthly report to the national secretary the fact that certain members had paid their assessments after the time prescribed by law for payment had expired. The national secretary, with knowledge of this practice, continued to issue each regular monthly assessment against the subordinate council, based upon the number of insurance members of the council as thus reported to him by the financial secretary, and to receive and accept from the treasurer of that council the full amount of each such monthly assessment. This practice continued with the knowledge of the other officers of the order charged with duties in connection with issuing and receiving assessments for the death benefit fund against the subordinate council. A similar practice had for a long time prevailed in the other councils of the order in respect to the pay-

ment by their members of their regular monthly assessments, and a similar practice, with respect to the issue and collection of assessments against the other councils of the order, had, in like manner, prevailed. Coughlin, knowing of this practice, in fact, believed that he was not required to pay his monthly assessment within thirty days from the first day of the month, and that he might lawfully pay the same after the expiration of that time, so long as he paid when requested so to do by the proper officer of his council; and, acting on this belief, he did not pay the assessments mentioned in the answer within thirty days from the first day of the month, but did pay the same after the expiration of that time to the financial secretary of his council. The court, in its opinion, says: "The foregoing facts are alleged in the reply, and for the purpose of testing its legal sufficiency are admitted by the demurrer;" and held, that "The laws of a fraternal benefit society providing for a monthly assessment against each subordinate council on the number of its members as reported monthly, payable immediately after the first day of the month, and that each member of a council should pay his regular monthly assessments within thirty days from the first day of each month, under penalty of *ipso facto* suspension for failure to so pay, the payment by the treasurer of a subordinate council of the monthly assessment immediately after the first day of each month was not a payment by any member of the council of his individual monthly assessment;" and that "the fact that a member believed that a violation of the laws of the society was justified did not save him from the penalty of suspension; that a subordinate council could not waive the conditions on which a member's benefit certificate was issued, or change the provisions of the laws of the order with respect to the time of payment of monthly assessments; and that the officers of the society in dealing with the members thereof were acting as special agents under a special authority, the limits of which were known to the members, and their acts in allowing members

to pay assessments after the time fixed did not operate either by way of waiver or estoppel to prevent the society from maintaining a defense to an action on a benefit certificate based on the failure of the member to pay a monthly assessment within the time fixed; that the fact that a subordinate council adopted a practice of not requiring its members to pay their monthly assessments until required to do so by a collecting officer, appointed by the council, and the financial secretary received the money so paid after the expiration of thirty days after the first day of the month, did not effect a change in the laws of the society, which, under its terms, could only be changed by the national council."

It needs no comment to show that the case just cited is immeasurably stronger on behalf of the beneficiary than the case under consideration. See *Grand Lodge, Ancient Order United Workmen* v. *Cressey,* 47 Ill. App. 616.

In *Borgraefe* v. *Supreme Lodge, &c., supra,* it was held, that "The beneficiaries of a member of a benevolent society who stands suspended for non-payment of assessments, by operation of the laws of the society, at the time of his death, cannot recover on the benefit certificate on the ground that the subordinate lodge of which he was a member had continued to treat him as a member, and to treat his unpaid dues to the supreme lodge as dues payable to the subordinate lodge, for which it had extended him credit."

In *Grand Lodge, Ancient Order United Workmen* v. *Jesse,* 59 Ill. App. 101, a member of a subordinate lodge failed to pay an assessment, and his certificate, by operation of the rules, became suspended. These rules provided that it might be renewed within a period of three months from the date of suspension, upon the condition that all assessments made during the time of suspension should be paid, and if not done within thirty days from such date, a certificate of good health should be furnished. After the expiration of thirty days, his delinquent

assessments were paid by his wife to the financier of the sub-ordinate lodge, but no certificate of health was furnished.  A minute of the payment and reinstatement was made on the books of the subordinate lodge, and the money forwarded to the proper officer of the general lodge, who refused to receive it. because no certificate of health accompanied it, and returned the same to the subordinate lodge.  It was returned to the wife of the member who paid it.  The minute upon the books of the reinstatement, etc., was stricken out, and an entry made, that because of the mental illness of the member and his inability to produce a certificate of health, as required by the rules of the grand lodge, his suspension was upheld.  The court held that, "as the rules of the grand lodge provided the only method of re-instating. a beneficiary certificate after it had been suspended for thirty days, the officer of the subordinate lodge could not waive the requirements; that a subordinate lodge and its officers have no authority to waive any rules of the grand lodge which relate to the substance of a contract between an individual mem-ber and the grand lodge." *Modern Woodman of America* v. *Tevis, supra,* is authority upon this point also.

It appears from the testimony of the financial secretary in this case that, in making payments to the national council he drew his warrant on the treasurer of the local council against the insurance fund.  Section 125 of the by-laws provides, that "No money shall be paid or transferred from the treasury of any council (except such moneys as the council is called upon to regularly pay for its current expenses and as provided by the laws of the order, or for purposes approved by the national council or board of directors) unless by a two-thirds vote of the members present and voting at a regular meeting held subse-quent to a regular meeting at which notice in writing of a reso-lution or intention to pay or transfer such money and the pur-poses and amount to be paid or transferred shall have been given and regularly read;" which would seem to be a sufficiently

expressed inhibition upon the local council to do the very thing which it did do in this case.

We are of opinion that by his failure to pay his assessments as provided by the constitution and by-laws, William J. Burroughs, *ipso facto,* forfeited his membership in the order of Knights of Columbus; that the subordinate local council, in undertaking to make good the delinquencies of its members, by its warrants drawn by its financial secretary against the insurance fund, without complying with section 125 of the by-laws, acted without authority; that in so acting it was the agent of its members, and not of the national council; and that the national council, having received the money in ignorance of the facts, has not waived the forfeiture, and is not by its conduct, estopped to set it up in defense to this action.

For these reasons, we are of opinion that the instruction set out in bill of exception No. 1, asked for by defendant in error, considered in the light of the facts of this case, is erroneous and should have been refused; and that the instructions asked for by plaintiff in error, set out in bill of exception No. 2, should have been granted. The judgment of the corporation court is, therefore, reversed, and the cause remanded for a new trial, in accordance with the views presented in this opinion.

*Reversed.*